**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JONATHAN BROCK,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case number 4:06cv1103 TCM** |
| | ) | |
| **LARRY DENNEY and** | ) | |
| **CHRIS KOSTER, Attorney General** | ) | |
| **for the State of Missouri,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**MEMORANDUM AND ORDER**

The 28 U.S.C. § 2254 petition of Jonathan Brock ("Petitioner"), a Missouri prisoner

serving consecutive and concurrent terms of imprisonment totaling eighteen years, for federal

habeas corpus relief is before the undersigned United States Magistrate Judge for review and

final disposition.[1] Also before the Court are Petitioner's Petition for an Injunction Prohibiting

Respondents' Continuation of Petitioner's Imprisonment [Doc. 21], Petitioner's Petition for

Case Disposition [Doc. 23], Petitioner's Motion for Acknowledgment and Correction of

Court's Order [Doc. 27], and Petitioner's Complaint and Petition for Declaratory Judgment

[Doc. 28].

**Background**

---

[1] This matter is before the undersigned United States Magistrate Judge on consent of the
parties. 28 U.S.C. § 636(c).

In September 2000, Petitioner was charged by information with two misdemeanors, domestic assault in the third degree and false imprisonment, arising out of incidents involving Petitioner and Sonja Cahill[2] on September 2, 2000. (Pet'r Ex. D at 2-3 [Doc. 18-1 at 31-32].)[3] This case was designated Case No. 009-0004390. (Id. at 1 [Doc. 13-1 at 30].) These charges were nolle prosed in February 2001, after the filing of the indictment in the next case. (Id.)

The next case began with the filing of a complaint against Petitioner in December 2000, and was designated Case No. 001-0003912. (See Docket Sheet, Resp. Ex. 11 at 1.) On February 7, 2001, a six-count indictment[4] was returned charging Petitioner with domestic assault in the second degree, in violation of Mo. Rev. Stat. § 565.073, a class C felony;

---

[2] At the time the charges were filed, Petitioner and Cahill were married, and she was referred to in the information and subsequent indictments as either Sonya Brock or Sonja Brock. (Pet'r Ex. D at 2-3 [Doc. 18-1 at 31-32]; Resp't Ex. 2 at 19-22; Resp't Ex. 11 at 5-7.) By the time of Petitioner's trial on later charges she preferred to be referred to by the last name of Cahill. (See, e.g., Resp't Ex.1 at 102, 603-04.) The Court will refer to her as Cahill.

[3] Petitioner's petition included in an appendix seven attachments that are not separately identified (Docs. 2-1 and 2-2). Petitioner also submitted four exhibits with his traverse (Doc. 18-1). To the extent the parties' materials are duplicates, the Court will cite to Respondents' separately identified exhibits. The Court will cite to Petitioner's materials when they do not duplicate the separately identified materials submitted by Respondents.

The Court notes that pages 276 through 279 of Respondents' Exhibit 2, the Legal File on direct appeal, are missing, as well as page 35 of Respondents' Exhibit 11, the Supplemental Legal File on direct appeal. The Court has been advised those pages are also omitted from the Legal File and Supplemental Legal File filed in the direct appeal to the Missouri Court of Appeals. No party to this habeas proceeding has raised an objection or concern about these missing pages.

[4] This indictment contains Counts I, II, IV, V, VI and VII. (Resp't Ex. 11 at 5-7.) While the indictment contains a Count VII, there is no Count III; therefore, there are only six counts in the indictment.

felonious restraint, in violation of Mo. Rev. Stat. § 565.120, a class C felony; unlawful use of a weapon, in violation of Mo. Rev. Stat. § 571.030.1(4), a class D felony; domestic assault in the 3rd degree, in violation of Mo. Rev. Stat. § 565.074, a class A misdemeanor; false imprisonment, in violation of Mo. Rev. Stat. § 565.130, a class A misdemeanor; and endangering the welfare of a child in the second degree, in violation of Mo. Rev. Stat. § 568.050, alleged to be a "class D felony,"[5] as a result of incidents on December 22, 2000, involving Petitioner, Cahill, and Cahill's minor son. (Resp't Ex. 11 at 5-7.)

On March 29, 2001, the trial court, the Honorable Michael P. David, presiding, conducted a hearing[6] on Petitioner's notice to proceed *pro se* (Resp't Ex. 6 at 50-71), received testimony of Petitioner (id. at 52-65), as well as Petitioner's written waiver of the right to counsel (id. at 65-69), and granted both Petitioner's motion to proceed *pro se* and Petitioner's counsel's motion to withdraw (id. at 69, 72, 74; see also Resp't Ex. 11 at 2.) In a subsequent order, Judge David stated, with respect to the March 29, 2001 order, that the

---

[5] This offense seems to be a misdemeanor because there was no allegation that the charged conduct was "committed as part of a ritual or ceremony," which is statutorily necessary to make the offense a felony. Mo. Rev. Stat. § 568.050.3.

[6] The cover sheet of the transcript for this hearing states it is a "Transcript of a guilty plea" that occurred on April 29, 2001. (Resp't Ex. 6 at 50.) The transcript itself reflects a hearing date of April 29, 2001. (See id. at 51 and 71.) The docket sheet for Case No. 001-0003912, however, does not report any proceeding or order on April 29, 2001, and reports that Judge David granted a waiver of the right to counsel and counsel's motion to withdraw on March 29, 2001. (Resp't Ex. 11 at 2, 3.) The parties do not dispute that this hearing occurred on March 29, 2001(see, e.g., Pet'r Traverse at page 14 n.1 [Doc. 18 at 15]), even though in their brief Respondents in one instance refer to the waiver as occurring on April 29, 2001. (Resp't Br. at 13.) The Court understands this hearing occurred on March 29, 2001.

Petitioner's "Waiver of Right to Assistance of Counsel conforms to the requirements of [Mo. Rev. Stat. § 600.051] as more fully discussed in <u>State v. Wilkerson</u>, 948 S.W.2d 440 (Mo. App. W.D. 1997), and was made knowingly and voluntarily." (Resp't Ex. 2 at 16; Resp't Ex. 6 at 98.) Judge David also denied Petitioner's "Motion for Public Defender's Office resources made available to [Petitioner]" (Resp't Ex. 6 at 75-77) and Petitioner's "Motion to Appoint Public Defender Investigator" (<u>id.</u> at 78-79). (Resp't Ex. 2 at 16; Resp't Ex. 6 at 95-98.)

The charges in this case, Case No. 001-0003912, were "nolle prosed" on June 19, 2001, upon the filing of the next indictment. (Resp't Ex. 11 at 4.)

In June 2001 Petitioner was charged by indictment with kidnapping in violation of Mo. Rev. Stat. § 565.110, a class B felony (Count I); domestic assault in the 2nd degree in violation of Mo. Rev. Stat. § 565.073, a class C felony (Count II); unlawful use of a weapon - exhibiting in violation of Mo. Rev. Stat. § 571.030, a class D felony (Count III); domestic assault in the 3rd degree in violation of Mo. Rev. Stat. § 565.074, a class A misdemeanor (Count IV); endangering the welfare of a child in violation of Mo. Rev. Stat. § 568.050, a class A Misdemeanor (Count V); kidnapping in violation of Mo. Rev. Stat. § 565.110, a class B felony (Count VI); domestic assault in the 2nd degree in violation of Mo. Rev. Stat. § 565.073, a class C felony (Count VII), and armed criminal action in violation of Mo. Rev. Stat. § 571.015 (Count VIII). (Resp't Ex. 2 at 19-22.) Counts I through V arose out of the incidents that occurred on December 22, 2000, involving Petitioner, Cahill, and Cahill's minor son. (<u>Id.</u> at 19-21.) Counts VI through VIII arose out of the incidents involving

Petitioner and Cahill that occurred on September 2, 2000. (Id. at 21-22.) This case was designated Case No. 011-0002189. (See, e.g., id. at 1.) The trial court expressly provided that the proceeding commenced by the June 2001 indictment, Case No. 011-0002189, was "deemed a continuation of the former cause [Case. No. 001-0003912] for purposes of entries of appearance, discovery, and motions previously heard and decided." (Id. at 23.)

Prior to trial, the trial court dismissed two of the charges arising out of the September 2, 2000 incident, Counts VII and VIII, due to improper venue. (Resp't Ex. 1 at 34; see Resp't Ex. 2 at 200-01.) Before sentencing, the trial court entered a judgment of acquittal on the last charge arising out of the September 2, 2000 incident, Count VI. (Resp't Ex. 1 at 602-03; Resp't Ex. 2 at 385.)

The relevant charges then for purposes of this habeas action are those arising out of the December 22, 2000 incident, or the charges in Counts I through V of the June 2001 indictment.[7] (Resp't Ex. 2 at 19-21.) Specifically, for the kidnapping charge in Count I Petitioner was charged with unlawfully confining Cahill on December 22, 2000, for a substantial period without her consent for the purpose of terrorizing her. (Id. at 19.) For the second degree domestic assault charge in Count II, Petitioner was charged with attempting

---

[7] A subsequent substitute information in lieu of indictment added allegations that Petitioner was a prior and persistent offender. (Resp't Ex. 2 at 325-28; see also id. at 2.) During trial, the trial court found Petitioner was a prior offender under Mo. Rev. Stat. § 558.016. (Resp't Ex. 1 at 464-65; see also Resp't Ex. 2 at 386.)

to cause physical injury to Cahill, who was married to Petitioner, by means of choking or strangulation. (Id. at 20.) For the unlawful use of a weapon charge in Count III, Petitioner was charged with knowingly exhibiting, "in the presence of one or more persons, a knife, a weapon readily capable of lethal use, in an angry or threatening manner." (Id.) For the third degree domestic assault charge in Count IV, Petitioner was charged with attempting to cause physical injury to Cahill, who was married to Petitioner, by striking her. (Id.) For the second degree endangering the welfare of a child charge in Count V, Petitioner was charged with "act[ing] with criminal negligence in a manner that created substantial risk to the life, body, and health of [Cahill's minor son], by assaulting his mother in his presence." (Id. at 21.)

The trial court, the Honorable David L. Dowd, presiding, held a hearing on July 13, 2001, where, in relevant part, Petitioner answered, under oath, further questions of the trial court regarding his *pro se* status. (Resp't Ex. 10; Resp't Ex. 6 at 106-12.) The trial court also denied Petitioner's initial and supplemental motions for funding from the general assembly. (See, e.g., Resp't Ex. 10 at 15-18, 21; Resp't Ex. 6 at 110-11; see also motion for general assembly funding listed in June 19, 2001, court order (Resp't Ex. 2 at 27) and Petitioner's supplemental motion for general assembly funding (id. at 40-52).)

Prior to trial, Petitioner filed several motions including a "motion for dismissal of Counts I, VI, VII, and VIII of the indictment, due to vindictive prosecution" (id. at 70-82; Resp't Ex. 11 at 36-47); a motion to sever Counts VI, VII and VIII (Resp't Ex. 2 at 58-66); and motions for funding (see e.g., id. at 120-26).

The case was assigned to the Honorable Robert H. Dierker for trial. (Resp't Ex.2 at 127.) On February 1, 2002, the trial court held a conference to address various pretrial matters. (Resp't Ex. 1 at 1-21.) The trial court denied Petitioner's motions to dismiss and for funding, among other pending motions; directed the State to make various individuals available for telephone or video interview or deposition; indicated the Court would conduct *voir dire*, with the parties submitting proposed questions in writing; directed Petitioner to "provide . . . a list of witnesses (including organizations) to whom he wishes to direct subpoenas for trial or for records custodian depositions"; and set the case for jury trial on April 22, 2002. (Id. at 12, 20, 35; Resp't Ex. 2 at 129.)

Petitioner subsequently filed several motions, including motions for court-appointed expert (Resp't Ex. 2 at 130-31, 158-59), seeking further consideration of his waiver of counsel and clarification of the "basic tools of an adequate defense" (id. at 160-66, 172-76, 182-86), seeking funding (see id. at 192-95), and to dismiss Counts VII and VIII for improper venue (id. at 200-01).

At a conference held just prior to the start of trial, the trial court dismissed Counts VII and VIII for improper venue (Resp't Ex. 1 at 34); and denied Petitioner's motion to sever Count VI (id.). When addressing the motions directed to his *pro se* status, the trial court asked Petitioner if he wished to withdraw his waiver of counsel, to which Petitioner responded "[n]o, that's not what I'm wishing" (id. at 26), and the court acknowledged Petitioner did not wish to withdraw the waiver (id. at 30). The trial court denied various

motions filed by Petitioner and directed the State to produce to Petitioner any transcripts of the telephone interviews that the State had prepared. (Resp't Ex. 2 at 177.) The trial court also ordered Petitioner's subpoenas to be served with "all costs waived"; and directed the staff at the institution housing Petitioner "to afford [Petitioner] access to tape recorded depositions in this cause and a tape player at the earliest possible time . . . [and] to send tape recorded depositions to court [on a specified date] with the [Petitioner]." (Id. at 250, 280.)

Petitioner proceeded *pro se* and testified at trial.[8] (See Resp't Ex. 1.) Cahill and Cahill's minor son were two of numerous witnesses who testified at trial. (Id.) The jury found Petitioner not guilty of the second degree domestic assault charge in Count II, and found Petitioner guilty of the other four charges arising out of the December 22, 2000 incident.[9] (Id. at 296-300; see also id. at 288 and Sentence and Judgment at page 1, Resp't Ex. 2 at 386.) Petitioner thereafter filed, in relevant part, a motion for new trial (Resp't Ex. 2 at 350-59), which the trial court denied upon assuming it was timely filed.[10] (Resp't Ex.

_____

[8] Prior to the 2002 state court criminal trial, Petitioner filed an action in this Court seeking an order staying the state criminal proceedings, which this Court dismissed under 28 U.S.C. § 1915A. (Resp't Ex. 2 at 94-95 and 97-101; see also id. at 108-18.) Petitioner appealed that ruling. (Id. at 103.) The United States Court of Appeals for the Eighth Circuit affirmed the dismissal. See, e.g., docket sheet for Brock v. Joyce, 4:01cv1973 CEJ (E.D. Mo. filed Dec. 17, 2001).

[9] The jury also found Petitioner guilty of Count VI, the kidnapping charge arising out of the September 2, 2000 incident. (Resp't Ex. 2 at 301) As noted earlier, the trial court entered a judgment of acquittal on that count prior to sentencing. (Resp't Ex. 1 at 602-03; Resp't Ex. 2 at 385.)

[10] The record contains three motions for new trial that appear to be identical. (Resp't Ex. 2 at 340-49, 350-59, and 374-83.) The first motion for new trial has a date of May 9, 2002, stamped on it with an illegible indication of what office received it. (Id. at 340.) The second motion for new trial has a clear file-stamp of the Circuit Court Clerk's Office on it, dated May 13, 2002. (Id. at 350.)

1 at 596-99, 603; Resp't Ex. 2 at 385.)   Petitioner also filed a motion for judgment of

acquittal on Counts I, V, and VI during trial, which the trial court denied, (Resp't Ex. 2 at

290-94) and a motion for judgment of acquittal on Counts I, V, and VI after trial (id. at 360-

_____

The third motion for new trial has a Circuit Court Clerk's Office file-stamp dated May 20, 2002 or
later.  (Id. at 374.)  In its discussion of the motion for new trial, the trial court noted that the motion
filed on May 13, 2002, was untimely because the court had not granted an extension for filing such
a motion and there was no record that a motion for new trial had been filed by May 10, 2002.  (Resp't
Ex. 1 at 596-99.)  On direct appeal, the appellate court found:

> The record on appeal contains a certified copy of the docket sheet, which shows that
> the first motion for new trial was filed on May 13, 2002.  The legal file contains a
> motion for new trial bearing a file stamp containing the word "FILED," and the date
> "May 13, 2002" and which is initialed by a deputy clerk under the printed name of the
> circuit clerk.  The legal file also contains another copy of the motion that bears a
> different stamp of clerk's office, which contains the date "May 9, 2002," but which
> does not contain the word "FILED" and is not initialed or otherwise signed on the line
> provided for a clerk to do so.

(Resp't Ex. 5 at 9.)

   In addition to a copy of the docket sheet for Case No. 011-0002189 that is part of the legal
file on direct appeal (Resp't Ex. 2 at 1-12), a docket sheet  that does not reflect the filing of a motion
for new trial prior to May 13, 2002, the record in this federal habeas proceeding contains another
copy of the docket sheet for Case No. 011-0002189, reportedly certified by the Circuit Clerk as "true"
on August 25, 2006, that reflects the filing of a motion for new trial on May 9, 2002.  (Ex. C attached
to Pet'r Traverse at 16.)  In his traverse, Petitioner reports that

> on or about November 3, 2005, after Petitioner's direct appeal and post-conviction
> appeal were over, the St. Louis circuit clerk's office corrected its records to reflect
> that Petitioner's 'May 9, 2002' new trial motion was indeed 'FILED' that day [see Pet'r
> Traverse, Ex. C at 16, (Doc. 18-1 at 32)] and such correction thoroughly refutes the
> conclusions of the appeals court and motion court. . . .  Such correction not only
> refutes both courts' conclusions but the correction reflects a timely filed new trial
> motion . . . preserving all claims within for review.

(Pet'r Traverse at 8 [Doc. 18 at 7-8].)  There is no explanation by the parties for the difference in the
motion for new trial docket entries for the two docket sheets; or for the subsequent correction of the
May 9, 2002, motion for new trial docket entry.

70), which the trial court granted as to Count VI only and otherwise denied (Resp't Ex. 1 at 603; Resp't Ex. 2 at 385). The Court sentenced Petitioner to a total term of eighteen years imprisonment, consisting of consecutive terms of fifteen years for kidnapping (Count I) and three years for unlawful use of a weapon (Count III), along with concurrent one year terms of imprisonment for both third degree domestic assault (Count IV) and endangering the welfare of a child (Count V). (Resp't Ex. 1 at 611-12; Resp't Ex. 2 at 386-89.)

At the conclusion of the sentencing proceeding, Petitioner indicated he desired representation, and the trial court appointed counsel to represent him on direct appeal. (Resp't Ex. 1 at 614; Resp't Ex. 2 at 384.)

In his direct appeal, Petitioner raised three points. (Resp't Ex. 3.) First, Petitioner argued that the trial court violated his rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the federal constitution by denying Petitioner's motion for judgment of acquittal on Count I because

> the State failed to prove that [Petitioner] confined his wife for the purpose of terrorizing her and further, failed to prove an increased risk to [Cahill] because of the confinement and showed only that the confinement was incidental to another offense, the assault, which is insufficient as a matter of law to prove kidnapping.

(Id. at 9, 14.) For his second point, Petitioner argued the trial court violated his rights to a fair trial and due process under the Fifth, Sixth, and Fourteenth Amendments to the federal constitution by denying his motion for judgment of acquittal on Count V because the State

failed to prove that [Petitioner's] act of assaulting his wife in the presence of his wife's [minor] son . . . created a substantial risk to the life, body or health of [the minor son], in that [Cahill's minor son] had witnessed similar arguments before, [Cahill's minor son] was not shown to be medically or psychologically affected or traumatized, and the law should not presume that a child is endangered per se, by mere exposure to a domestic dispute.

(Id. at 10-11, 20-21.) For his final point on appeal, Petitioner urged that the trial court violated his rights under the Fifth, Sixth, and Fourteenth Amendments to the Federal Constitution by denying Petitioner's

motion to dismiss for prosecutorial vindictiveness, as the record showed an unrebutted presumption that the [February 2001] indictment was superseded [by the June 2001 indictment] as a coercive and retaliatory measure and in direct response to [Petitioner's] self-representation and request for funding, where the prosecutor originally charged [Petitioner] with only the December 22, 2000 incident, and later changed the Class C offense of felonious restraint to a Class B offense of kidnapping and further charged a whole new incident of domestic abuse alleged to have occurred on September 2, 2000, and where it was clear from the evidence and the [trial] court's later rulings to transfer two counts and dismiss one count, that the second indictment represented gross over-charging of the case.

(Id. at 11-12, 25.)[11]

The appellate court affirmed Petitioner's conviction and sentence. (Resp't Ex. 5.) The appellate court described the case as follows:

_____

[11] This Court understands the reference in point three of Petitioner's direct appeal to the "transfer [of] counts and dismiss[al of] one count" is a reference to the trial court's dismissal of Counts VII and VIII of the June 2001 indictment due to improper venue (Resp't Ex. 1 at 34) and the trial court's entry of a judgment of acquittal on Count VI of the June 2001 indictment prior to sentencing (id. at 602-03; Resp't Ex. 2 at 385). This Court is aware of no other "transfer" of a count or "dismissal" of a count in the June 2001 indictment. Counts VI, VII, and VIII of the June 2001 indictment were the only counts in that indictment that arose out of the September 2, 2000 incident.

The charges arose from an incident in which [Petitioner], while trying to prevent his wife[, Cahill,] from leaving their home, punched, beat, and choked her and dragged her to other rooms of their dwelling and threatened to kill her with a knife if she told her [then-] nine-year-old son to leave. This attack began while [Petitioner's]wife was standing next to her nine-year-old son, and continued although the child stayed with his mother as [Petitioner] moved her, pleaded with [Petitioner] to stop hitting his mother, and wrapped his arms around her waist in an attempt to shield her from [Petitioner]. . . .

[More specifically, Petitioner] and Ms. . . . Cahill, the victim, were married on July 31, 2000, after which they lived together with Ms. Cahill's nine-year-old son . . . in an apartment in the City of St. Louis. On December 22, 2000, Ms. Cahill told [Petitioner] she thought they needed to separate and began to pack some of her and [her son]'s belongings. As Ms. Cahill and [her son] approached the door to leave, [Petitioner] stood in front of the door. When Ms. Cahill reached for the door, with [her son] standing next to her, [Petitioner] struck her in the face. In [Petitioner]'s own words, "she was not free to leave." [Petitioner] pulled Ms. Cahill into another room and struck her multiple times as she was lying on the floor. [Ms. Cahill's son] followed them into the room. Ms. Cahill testified, "[My son] was right there, yelling and screaming . . . he wanted to help, but he was scared too." [Ms. Cahill's son] was telling [Petitioner] to stop. [Petitioner] himself testified:

Q.      [Ms. Cahill's son] was present when you were hitting his mom?

A.      Yes, he was.

Q.      He was screaming, begging you to quit hitting his mom.

A.      What it was is that, from the time I struck the second time, he ran in to her, he wrapped his arms around her waist, as more like a shield, for I wouldn't strike her again, and she was bent over, holding him, and she instructed him, she say, "Go downstairs - " no, she say, "Go downstairs and call 911."

Q.      And you continued punching her.

A.      I walked up to her and struck her again.

[Ms. Cahill's son] ran downstairs and alerted neighbors who phoned the police. [Petitioner] held Ms. Cahill in a headlock, which interfered with her breathing

and pulled her into the bathroom where she spit blood into the toilet. [Ms. Cahill's son] came back upstairs and looked at [Petitioner] holding and choking Ms. Cahill in the bathroom. Her face was bleeding and eyes were swollen shut. [Petitioner] was still hitting Ms. Cahill and [Ms. Cahill's son] again asked him to stop. Ms. Cahill testified she "was scared something might happen" to [her son] and tried to tell him to go back downstairs. At that point [Petitioner] pulled a knife and held it to Ms. Cahill's throat and said, "Tell him not to go anywhere. You tell him to leave, I'll kill you." [Ms. Cahill's son] cried and would not leave. [Petitioner] finally released Ms. Cahill when [her son] observed that the police had arrived.

Ms. Cahill was taken to the emergency room with facial swelling, lacerations, abrasion marks on her neck, bleeding inside one eye, and severe pain. A CAT scan revealed cheekbone fractures and an orbital floor fracture.

(Id. at 1-3.)

With respect to the first point, in which Petitioner challenged the kidnapping conviction on the grounds the State had not established he had the purpose of terrorizing Ms. Cahill, the appellate court found

In this case the sequence of criminal events was generated by [Petitioner]'s expressed intent to keep Ms. Cahill in the apartment. His confinement of Ms. Cahill in the apartment increased the risk of even more serious criminal activity and greater harm and danger to Ms. Cahill. Her confinement made her escape more difficult and [Petitioner]'s criminal activity less visible.

Terrorize is defined as "to fill with terror or anxiety," "to coerce by threat or violence." Webster's Third New International Dictionary 2361 (1966). [Petitioner]'s repeated beating of Ms. Cahill and threat to kill her while holding a knife to her throat, all in front of her son, was sufficient evidence to show that his purpose was to terrorize Ms. Cahill. Ms. Cahill's pleading with her son to get help and her attempt to get him to leave again after he returned is evidence of the terror she experienced. "Terror that a victim experiences during the commission of a crime is a harm that the kidnapping statute is intended to address." The evidence in this case demonstrates that Ms. Cahill's confinement was more than incidental to the assault. [Petitioner] was not unfairly subjected to multiple punishments. Point one is denied.

(Id. at 5-6) (citations omitted). In denying point two, the appellate court concluded the "evidence was sufficient for reasonable jurors to find that [Petitioner]'s conduct created a substantial risk of endangerment to [Cahill's son]'s life, body and health." (Id. at 8.)

With respect to the third point challenging the trial court's denial of Petitioner's motion to dismiss Counts I, VI, VII, and VIII for prosecutorial vindictiveness, the Missouri Court of Appeals found the claim moot as to Counts VI through VIII because the last two of those Counts "were dismissed for improper venue, and the trial court granted [Petitioner]'s motion for acquittal on count VI." (Id.) The appellate court further found that the error as to Count I was "not preserved" because Petitioner had not filed a timely motion for new trial in that the motion "was filed on May 13, 2002, more than fifteen days after the verdict was returned on April 25, 2002." (Id.) Noting that the certified copy of the docket sheet available in the record only showed the first motion for new trial filed on May 13, 2002, and that the legal file contained a copy of another motion for new trial, containing the date May 9, 2002, that was not properly marked "filed" and was not initialed or signed on the line where a clerk should do so, the appellate court found Petitioner's "claim that the motion [for new trial] was originally filed on May 10 [wa]s not supported by the record." (Id. at 9.) Concluding that the motion for new trial filed on May 13, 2002, was late and "preserves nothing for review," the appellate court also found "no extraordinary circumstances . . . to justify reviewing this argument as a matter of plain error." (Id. at 9-10.) The appellate court issued its mandate on September 19, 2003. (Resp't Ex. 6 at 22, 150.)

14

Petitioner then timely filed a *pro se* motion for post-conviction relief under Missouri Supreme Court Rule 29.15. (Resp't Ex. 6 at 5-20.) After the motion court granted an extension of time to file, Petitioner filed *pro se*[12] a timely amended motion for post-conviction relief pursuant to Rule 29.15[13] raising claims that he did not knowingly and voluntarily waive trial counsel, because the waiver was made on the assumption he would be allowed State funds and resources to support his defense and he would not have waived counsel if he had known there was no right to funding, as well as various claims that his appellate attorney provided ineffective assistance of counsel. (Id. at 4; 21-39.) With respect to the ineffective assistance of appellate counsel claim, Petitioner argued his appellate attorney failed to present for review whether the trial court erred in not conducting another on-the-record discussion whether his waiver of counsel was knowing and voluntary, erred

_____

[12] Petitioner's appointed post-conviction attorney had filed a "Statement in Lieu of Filing an Amended Motion and Request for the Court to Rule on the issues raised in [Petitioner]'s *pro se* Motion," noting that Petitioner had filed a *pro se* amended motion and indicating there were no grounds for counsel to file an amended motion. (Resp't Ex. 6 at 40-41.) The motion court found Petitioner's *pro se* amended post-conviction motion timely; "accept[ed Petitioner]'s application to proceed *pro se*," and denied Petitioner's application for funding and for evidentiary hearing. (Id. at 42.)

[13] Upon the filing of the timely amended post-conviction motion, any claims in the initial *pro se* motion for post-conviction relief were no longer before the motion court except to the extent they were included in the amended motion. See **Tinsley v. State**, 258 S.W.3d 920, 927 (Mo. Ct. App. 2008) ("the only claim which the motion court could have considered and determined was that raised in the amended Rule 29.15 motion for post-conviction relief [because t]he filing of an amended motion superseded [the initial] motion and rendered it a nullity" (citations omitted)); **Day v. State**, 143 S.W.3d 690, 693-94 (Mo. Ct. App. 2004) ("The amended motion supersedes [the initial] motion and renders it a nullity. . . . . Therefore, the allegations of a timely-filed amended motion would be the only matters before the motion court" (citation omitted)); **Leach v. State**, 14 S.W.3d 668, 670-71 (Mo. Ct. App. 2000) (an allegation not included in the amended motion for post-conviction relief is "not properly before the motion court").

in denying Petitioner's motion for general assembly funding, and erred in denying Petitioner's motion for bill of particulars regarding the kidnapping charge in Count I. (See, e.g., id. at 23-24.). Petitioner also claimed his appellate counsel provided ineffective assistance in broadening on appeal the argument Petitioner had presented in his motion for judgment of acquittal on the kidnapping charge in Count I, in changing the theory Petitioner had presented for the dismissal of the kidnapping charge in Count I due to vindictive prosecution, and in failing to provide the appellate court with proof and case law showing that Petitioner had timely filed his motion for new trial on May 9, 2002. (Id. at 24-25.)

The motion court[14] denied Petitioner's request for an evidentiary hearing, dismissed the proceeding for lack of jurisdiction to the extent it challenged the misdemeanors in Counts IV and V, and otherwise denied the motion. (Id. at 42, 146-62.) In relevant part, the motion court state:

## Findings of Fact

1. . . . During the pendency of [Case. No. 001-0003912, Petitioner] waived his right to counsel and proceeded *pro se*. 4/29/01 [Sic -- 3/29/01, see footnote 6, supra,] Hearing Tr. 20.

2. Following the superseding indictment, the criminal assignment division of this Court treated it as a continuation of the prior proceeding, and [Petitioner]'s previous waiver of counsel remained in effect. The case was assigned to a trial division (Dowd, J.), at which time [Petitioner] reiterated his waiver of counsel. 7/13/01 Hearing Tr. 3-4 *passim*. At that time, [Petitioner] also sought public funds for trial preparation and for expert assistance in presenting a defense of diminished capacity. The funding motion was denied,

---

[14] The same judge presided over the motion court proceedings who had presided over the trial court proceedings.

7/13/01 Hearing Tr. 17, but a psychiatric examination was ordered. The examination by an independent psychologist employed by the Department of Mental Health disclosed no mental disease or defect of any kind and found that [Petitioner] was competent to waive counsel and proceed to trial. Report of Dr. Scott, 11/30/2001.

3. In January, 2002, the underlying case was assigned to the undersigned judge for trial. At [Petitioner]'s request, the court held a pretrial conference, after which a pretrial order issued, setting the trial date and providing for pretrial discovery. [Petitioner] was directed to provide a list of witnesses to be subpoenaed for trial, and the State was directed to make witnesses available for telephone deposition or interview. Later, subpoena forms were provided to [Petitioner] for completion and forwarding to the proper officers for service.

\* \* \*

11. With regard to the issue of state funding, [Petitioner] alleges in the amended motion for relief that he repeatedly sought such funding and would not have waived counsel had he known that no such funding would be made available. Amended motion, ¶9a. [Petitioner] asserts that the trial court conducted an inadequate inquiry into this aspect of the voluntariness of the waiver of counsel, and this issue should have been raised by appellate counsel.

12. The record of the underlying proceeding shows that [Petitioner]'s motions for state funding were denied on several occasions. Nevertheless, in the pretrial conference and at trial, [Petitioner] unequivocally asserted that he wished to proceed *pro se*, even without state funding. E.g., Trial Tr. 26.

13. In lieu of funding as requested by [Petitioner], the trial court provided an opportunity to interview or depose important State's witnesses, Trial Tr. 8-12. [Petitioner] was also provided compulsory process to secure the attendance of defense witnesses. Trial Tr. 16-17. A number of subpoenas were served on third parties, and responded to. Other subpoenas were defectively prepared by [Petitioner]. Trial Tr. 26. None of the witnesses or material sought by [Petitioner] had any direct bearing on the events at [the] apartment [on December 22, 2000], but pertained only to collateral or impeaching matters. [Petitioner] was provided a free examination at State expense to determine his psychiatric condition. The examiner found no mental disease or defect, and nothing to support the claim of diminished capacity.

Report of Dr. Scott, 11/20/2001. [Petitioner] has never contested the examiner's conclusions.

14. Neither the amended motion nor the trial record discloses what [Petitioner] would have achieved with additional funding. At no time has [Petitioner] identified what witnesses or other admissible evidence would have been discovered by a publicly funded investigator. There are no allegations in the amended motion for post-conviction relief that in fact [Petitioner] suffers from any mental disease or defect resulting in diminished capacity. Other than [Petitioner]'s bald assertions and the undisputed sequence of events, there are no facts pleaded showing that the State's revision of the charges in the superseding indictment was the result of "prosecutorial vindictiveness." Both before and after the superseding indictment, [Petitioner] vigorously pursued his claims for state funding to assist his defense. However, when directly asked prior to trial whether he wished to withdraw his waiver, he unequivocally maintained his desire to waive counsel, Trial Tr. 26, instead insisting on a right to funding. The Court provided the functional equivalent of the specific items that the defense sought. The record, including the amended motion, clearly demonstrates that [Petitioner] was provided with "the basic tools" of an effective defense, or their functional equivalent.

\*   \*   \*

Conclusions of Law

\*   \*   \*

3. In regard to a waiver of the right to counsel at trial:

Because a defendant has the constitutional right to an attorney, if he does not effectively waive that right, yet is put to trial without the assistance of counsel, his conviction and punishment violate due process. [Citation omitted.] Before a defendant may waive the right to counsel, the trial court must determine that he is competent to stand trial and that he is knowingly and voluntarily waiving his right. See Godinez v. Moran, 509 U.S. 389 (1993). That is all the trial court must find. It need not find that the defendant can conduct his defense effectively or as effectively as an attorney. See id. at 399-400. [Wise v. Bowersox, 136 F.3d 1197, 1202 (8th Cir. 1998).]

18

4.  On the record of this case, there can be no doubt that [Petitioner] voluntarily and intelligently waived his right to counsel.  Judges David and Dowd examined [Petitioner] thoroughly concerning his understanding of the charges, the trial process, and the possible consequences of proceeding without a lawyer.  A written waiver was executed.  Judge David expressly found that the waiver was knowing and voluntary.  Order, 6/15/2001 (filed in [case] No. 001-[000]3912).  [Petitioner]'s competency cannot be questioned.  The examining psychologist expressly stated that [Petitioner]'s competency extended to the decision to represent himself.  Scott Report, p. 8.  His claim that his waiver was defective because he never wished to surrender his claim to public funds to assist his defense is without merit.  On at least two occasions before trial, [Petitioner] was informed that he would not be provided with public funding for investigators and the like that would be available if he accepted standby counsel.  He unequivocally rejected standby counsel and the associated resources.  7/13/01 Tr. 7-8, 17-18.

5. [Petitioner]'s contention at this stage seems to be that the State put him to a Hobson's choice of relinquishing his right to represent himself or his right to the basic tools to present an adequate defense.  In State v. Armentrout, 8 S.W.3d 99 (Mo. banc 1999), the Missouri Supreme Court addressed a similar argument:

> In Faretta v. California, 422 U.S. 806, 818-20 . . . (1975), the Supreme Court held that the Sixth Amendment of the Constitution guarantees the accused in a criminal prosecution the right to self-representation in lieu of the right to assistance of counsel.  In Ake v. Oklahoma, 470 U.S. 68 . . . (1985), the Supreme Court held that the Sixth Amendment right to counsel also encompasses "the basic tools for an adequate defense," that must "be provided to those defendants who cannot afford to pay for them."  Id. at 77.  The state may not require a defendant to relinquish one of two procedural rights in order to obtain the protection of the other.  Simmons v. United States, 390 U.S. 377, 394 . . . (1968).
>
> In this case, it is clear that Appellant had the right to represent himself under Faretta, but it is not at all clear that Ake required state funding for all the depositions and experts Appellant requested, or that Ake (which involved a defendant represented by counsel) requires any funding whatsoever where a defendant chooses to represent himself.  It is unnecessary to address these

particular applications of <u>Ake</u>, however, because even if funding was required, the record shows conclusively that Appellant was not forced to relinquish his right to self-representation in order to obtain that funding.

[<u>Armentrout</u>, 8 S.W.3d at 105.] This Court's research discloses no more pertinent authority than <u>Armentrout</u>.

6. [Petitioner]'s claim of an inadequate waiver of his right to counsel is refuted by the record. He waived counsel. His real complaint is that he was denied due process under <u>Ake</u> . . . , because he was not provided resources necessary to present an adequate defense. This Court does not read <u>Ake</u> as giving criminal defendants a blank check on the public coffers. <u>Ake</u> involved a patent need for expert psychiatric assistance. Among its progeny, <u>Little v. Arm[o]ntrout</u>, 835 F.2d 1240 (8th Cir. 1987)[(en banc)], held that the State is also obliged to provide other types of expert assistance, but only on a showing of a reasonable probability that such assistance is in fact necessary, as when disputed expert testimony is a crucial part of the State's case.

7. In [Petitioner]'s case, the only thing that he demanded that was not provided in substance was the services of an investigator. Such services were not as a matter of fact indispensable to presentation of [Petitioner]'s defense, nor, in this Court's opinion, can <u>Ake</u> or <u>Little</u> be read to demand such luxuries. A confined prisoner who elects to proceed without counsel must accept the disadvantages that necessarily inure to that status. If it were otherwise, the constitutional right to represent oneself would be converted to a constitutional right to be a full-service law office at public expense. The questionable premise even of <u>Little</u> cannot be stretched so far. The "basic tools of an adequate defense," other than experts, consist of no more than the average defense attorney would enjoy: discovery and compulsory process.

8. As noted above, as a matter of fact, [Petitioner] was provided the functional equivalent of depositions, and he had full access to compulsory process to secure evidence and witnesses at trial. Due process demands no more. <u>Cf.</u> . . . <u>Armentrout</u>, <u>supra</u>. Appellate counsel was not ineffective in failing to brief such meritless points.

(Resp't Ex. 6 at 11-13 (alterations in ¶ 3 of the Conclusions of Law in original).)

Petitioner *pro se* appealed arguing only that the motion court clearly erred in denying his Rule 29.15 motion without an evidentiary hearing because the trial court had failed to ensure that Petitioner had validly waived counsel and understood the consequences of such a waiver in violation of the Sixth Amendment right to counsel. (Resp't Ex. 7 at 10, 11.) Specifically, Petitioner's sole point in his post-conviction appeal urged the trial court did not ensure that Petitioner actually understood the statutory offenses included within the charges, the possible defenses to the charges as well as the mitigating circumstances, "all other facts essential to a broad understanding of the whole matter," and "the significance and consequences of the whole matter"; and the trial court did not apprise Petitioner of the "dangers and disadvantages of self-representation" in violation of his Sixth Amendment right to counsel. (Id. at 10.)

The Missouri Court of Appeals affirmed the motion court's decision in a summary order accompanied by an unpublished memorandum opinion. (Resp't Ex. 9.) In summarizing the trial court proceedings regarding Petitioner's waiver of counsel, the appellate court stated:

> During the pendency of the case, [Petitioner] filed a motion to proceed *pro se*, which was heard by the Honorable Michael P. David (Judge David). In addition to questioning [Petitioner] as required by [Mo. Rev. Stat.] Section 600.051, Judge David asked [Petitioner] about his experience with the criminal justice system and his court-appointed attorney in the current case, his reasons for desiring to proceed *pro se*, and whether [Petitioner] had any questions for the court regarding his motion. Before ruling on the motion, Judge David noted the following about [Petitioner]:
>
>> [A]ll of your responses have been appropriate to the questions asked. They have been insightful as to what appear to be certain discrepancies within the charging document itself. And they are knowledgeable with respect to the consequences of a finding of

guilt on these charges, and . . . the Court has had no inappropriate response from [you] in any of this inquiry.

[Resp't Ex. 6 at 66-67.] Judge David granted Movant's motion to proceed *pro se*, and [Petitioner] signed a written waiver waiving his right to assistance of counsel.

Subsequently, [Petitioner] filed various motions seeking public funds and resources to assist with his defense, which the trial court denied after concluding that [Petitioner] was not entitled to such assistance.

\* \* \*

The case was eventually assigned to the Honorable David L. Dowd (Judge Dowd), who held a pre-trial conference, at which [Petitioner] reiterated his desire to proceed *pro se*. During the conference, Judge Dowd explained to [Petitioner] that if he utilized stand-by counsel, then he would have available to him all of the resources available to the public defender's office. [Petitioner] emphatically denied the assistance of stand-by counsel, explaining that he had a right to represent himself, that he was capable of doing so, and that he had done so previously on another criminal charge. Also during the pre-trial conference, the charges in the superceding indictment [filed in June 2001] and the ranges of punishment for those charges were reviewed and the court gave [Petitioner] the opportunity to discuss off the record a potential plea bargain agreement with the State to no avail.

The court then heard a supplemental motion seeking public funds and resources to assist with his defense filed by [Petitioner]. The trial court again denied the motion; however, the court ordered a psychiatric examination of [Petitioner]. The evaluating psychologist concluded that [Petitioner] was competent to waive counsel and to decide to proceed *pro se*.

The case proceeded to trial before the Honorable Robert H. Dierker (Judge Dierker). Prior to trial, Judge Dierker confirmed with [Petitioner] that he did not wish to withdraw his waiver of counsel and still desired to proceed *pro se*.

(Id. Mem. at 2-4 (footnotes omitted) (alterations in quote from hearing before Judge David in original).)

The appellate court noted that "allegations of trial court error are not cognizable in Rule 29.15 motion proceedings. <u>State v. Ferguson</u>, 20 S.W.3d 485, 509 (Mo. banc 2000)" and that Petitioner did not argue a claim of ineffective assistance of appellate counsel in his initial brief. (<u>Id.</u> Mem. at 7.) Then, based on an argument presented by Petitioner in his reply brief that his amended post-conviction motion, at paragraph 8(b), presented an ineffective assistance of counsel claim he was presenting for appellate review, the appellate court concluded that, "[e]ven if we interpret [Petitioner]'s argument on appeal as a claim of ineffective assistance of appellate counsel based upon the allegation of error in his amended motion," the point on appeal was not preserved for review because it had not been raised before the motion court. (<u>Id.</u>, Mem. at 8.) The appellate court noted that, in his amended motion, Petitioner had "based his claim that his waiver of counsel was invalid on the issue of access to public funding and resources." (<u>Id.</u>) On appeal, the appellate court found, Petitioner raised "a distinct and new claim" that his "waiver of counsel was invalid because the trial court failed to ensure that [Petitioner] understood 'the statutory offenses included within the charges; the possible defenses to the charges and circumstances in mitigation thereof; and all other facts essential to a broad understanding of the whole matter.'" (<u>Id.</u> at 9.) Moreover, to the extent Petitioner's point on appeal challenged the validity of his waiver of counsel based on his lack of understanding that public funds and resources would not be available to assist with his defense, the appellate court found the argument was without merit. (<u>Id.</u>) The appellate court concluded "[t]he record supports the motion court's findings regarding the validity of [Petitioner]'s waiver of trial counsel [and] does not reveal an obvious

error which would have required reversal suggesting ineffective assistance of appellate counsel." (Id.)

Petitioner then filed this habeas action presenting six grounds for relief. For ground one, Petitioner claims the State failed to produce sufficient evidence establishing beyond a reasonable doubt the "substantial period" element of the kidnapping charge, in violation of his constitutional right to due process, citing **Jackson v. Virginia**, 443 U.S. 307, 324 (1979). (Pet. at 5 [Doc. 2 at 4].) For ground two, Petitioner alleges that his waiver of the right to counsel was invalid because, prior to the waiver, the trial court failed thoroughly to undertake a colloquy he alleges is federally required, including discussing the elements of the charges, the offenses included within the charges, possible defenses and mitigating circumstances, and the disadvantages of self-representation. (Id.) For ground three, Petitioner alleges the trial court violated his "federal right to have the court look into the waiver" because it did not conduct a hearing as requested by Petitioner. (Pet. at 6 [Doc. 2 at 5].) In ground four, Petitioner claims the trial court erred in not conducting a hearing into Petitioner's motion to dismiss the kidnapping charge due to vindictive prosecution. (Id.) For ground five, Petitioner alleges the trial court erred when it allegedly required him to choose between either proceeding *pro se* without funding to present his defense or proceeding with stand-by counsel or a public defender and the attendant resources associated with such representation. (Pet. at 6A [Doc. 2 at 6].) For ground six, Petitioner alleges that his appellate counsel was ineffective in failing to provide the appellate court with proof that the claim for vindictive

prosecution was preserved by showing the timely filing of his motion for new trial on May 9, 2002, and in failing to advance other preserved federal claims. (Id.)

Respondents counter that each of these claims, except ground four, are procedurally barred and that all of the claims are without merit.[15]

Procedural Bar to Federal Habeas Relief on Grounds One, Two, Three, Five, and Six. It is well established that "[t]o be eligible for federal habeas corpus relief, a state prisoner must first exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court." **Carney v. Fabian**, 487 F.3d 1094, 1096 (8th Cir.) (internal quotation marks omitted) (quoting Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006), cert.denied, 549 U.S. 1134 (2007)), cert. denied, 128 S.Ct. 721 (2007). This requires that the federal habeas petitioner present to the state courts "the same legal theories and factual bases" that support the petitioner's habeas claims. **Pollard v. Armontrout**, 16 F.3d 295, 297 (8th Cir. 1994). "A petitioner meets the fair presentation requirement if the state court rules on the merits of [the] claims, or if [the petitioner] presents [the] claims in a manner that entitles [the petitioner] to a ruling on the merits." **Gentry v. Lansdown**, 175 F.3d 1082, 1083 (8th

---

[15] Respondents also urge that ground one is not cognizable in a federal habeas action because it seeks a determination of what constitutes a "substantial period" for purposes of Missouri's kidnapping statute, Mo. Rev. Stat. § 595.110, and such a question is purely a state law claim, which is not a proper subject of federal habeas relief. 28 U.S.C. § 2254(a); **Nance v. Norris**, 392 F.3d 284, 289 (8th Cir. 2004) ("errors of state law are not cognizable in federal habeas courts"). A petitioner is entitled to habeas corpus relief under § 2254, however, "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." **Jackson v. Virginia**, 443 U.S. 307, 324 (1979). The Court construes Petitioner's first ground, in which Petitioner cited to **Jackson**, as presenting a proper claim for federal habeas relief, rather than a non-cognizable state law claim.

Cir. 1999). To obtain federal habeas review, the petitioner must have presented the claims to the state courts in accordance with state procedural rules. **Burr v. Snider**, 234 F.3d 1052, 1055 (8th Cir. 2000); **Abdullah v. Groose**, 75 F.3d 408, 411 (8th Cir. 1996) (en banc).

"'If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted.'" **Carney**, 487 F.3d at 1096 (quoting <u>Barrett v. Acevedo</u>, 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc)); <u>accord</u> **Clay v. Norris**, 485 F.3d 1037, 1039 (8th Cir. 2007); **Malone v. Vasquez**, 138 F.3d 711, 716 (8th Cir. 1998). Additionally, a federal habeas claim is generally defaulted if it was presented to but not reviewed by the state court based on a state law ground, including a procedural basis, "that is independent of the federal question and adequate to support the judgment." **Collier v. Norris**, 485 F.3d 415, 425 (8th Cir. 2007) (internal quotation marks omitted) (quoting **Coleman v. Thompson**, 501 U.S. 722, 729 (1991)); <u>accord</u> **Francis v. Miller**, 557 F.3d 894, 898 (8th Cir. 2009), <u>petition for cert. filed</u>, _____ U.S.L.W. _____(U.S. July 9, 2009) (No. 09-5388). If a claim is defaulted, a federal habeas court will only consider it if the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice. **Sawyer v. Whitley**, 505 U.S. 333, 338-39 (1992).

For ground one, Petitioner claims the State failed to produce sufficient evidence establishing beyond a reasonable doubt the "substantial period" element of the kidnapping charge, in violation of his constitutional right to due process, citing **Jackson**, 443 U.S. at 324. (Pet. at 5 [Doc. 2 at 4].) Respondents urge the claim in ground one should have been

presented on direct appeal but was not because the claim on appeal was directed to whether Petitioner confined Cahill for the purpose of terrorizing her and whether the confinement was incidental to another offense, the assault, rather than whether Cahill's confinement was "for a substantial period," the issue presented in ground one. Petitioner urges he is not now taking a different approach from his direct appeal because the "substantial period" element of the kidnapping offense is directly tied to whether the confinement is incidental to another offense, and the appellate court decided that Cahill's confinement was more than incidental to the assault. (Pet'r Traverse at 3 [Doc. 18].)

Missouri Revised Statutes § 565.110.1 provides that "[a] person commits the crime of kidnapping if he unlawfully removes another without his consent from the place where he is found or unlawfully confines another without his consent for a substantial period, for the purpose of . . . (5) Inflicting physical injury on or terrorizing the victim or another." The Comment to 1973 Proposed Code regarding this statutory provision states in relevant part that "[k]idnapping is not meant to cover the confinement or movement which is merely incidental to the commission of another offense. . . . [T]he confinement or movement should be considerably more than that which is merely incidental to the commission of another offense." In addressing whether the movement or confinement of a person is sufficient to constitute kidnapping, rather than being incidental to another offense, the pertinent issue is whether "there was any increased risk of harm or danger to victim from the movement or confinement that was not present as a result of the other offense." **State v. Morrow**, 941 S.W.2d 19, 21 (Mo. Ct. App. 1997) (internal quotation marks omitted) (quoting State v.

Jackson, 703 S.W.2d 30, 33 (Mo. Ct. App. 1985)); **State v. Williams,** 860 S.W.2d 364, 366 (Mo. Ct. App. 1993).

In discussing Petitioner's first point in his direct appeal, the appellate court, in relevant part, construed Petitioner's position as an argument that the evidence was insufficient to support a kidnapping conviction because Petitioner's "confinement of Ms. Cahill was merely incidental to his assault on her." (Resp't Ex. 5 at 4.) Without addressing whether Missouri Revised Statute § 565.110.1(5) includes such a requirement, the appellate court found that, even if such a requirement existed, "there was sufficient evidence for a reasonable jury to find that [Petitioner]'s conduct was not simply incidental to the assault he committed against his wife." (Id. at 5.) Specifically, the appellate court concluded:

> In this case the sequence of criminal events was generated by [Petitioner]'s expressed intent to keep Ms. Cahill in the apartment. His confinement of Ms. Cahill in the apartment increased the risk of even more serious criminal activity and greater harm and danger to Ms. Cahill. Her confinement made her escape more difficult and [Petitioner]'s criminal activity less visible.

(Id.) None of the statements made by the appellate court in reaching its conclusion on this point indicate that the appellate court was expressly addressing whether Cahill was confined for a "substantial period." Nor does Petitioner's first point on direct appeal present "substantial period" as an issue on appeal.

In view of the record on direct appeal and because it was the increase in harm or danger to the victim, rather than the length of the period of confinement,[16] that determined

_____

[16] "The amount of movement or confinement necessary for the act of kidnapping cannot be defined precisely as it will vary according to the circumstances." **State v. Woodland**, 768 S.W.2d

whether or not the confinement was incidental to another offense in the direct appeal, Petitioner is now presenting a claim different from the claim he presented on direct appeal regarding the sufficiency of the evidence supporting the kidnapping charge, and the present claim has not been presented to or addressed by a state court and may not now be presented to state court.  Failing to present claims on appeal results in a procedural default of those claims.  See **Sweet v. Delo**, 125 F.3d 1144, 1150 (8th Cir. 1997); **Kennedy v. Delo**, 959 F.2d 112, 115-16 (8th Cir. 1992).  Therefore, ground one is procedurally defaulted.

For ground two, Petitioner alleges that his waiver of the right to counsel was invalid because, prior to the waiver, the trial court failed thoroughly to undertake a colloquy Petitioner alleges is federally required, including discussing the elements of the charges, the offenses included within the charges, possible defenses and mitigating circumstances, and the disadvantages of self-representation.  (Pet. at 5 [Doc. 2 at 4].)  Respondents contend ground two is procedurally barred because it raises trial court error that was first presented to the state courts in Petitioner's post-conviction appeal (compare Pet. at 5 with Resp't Ex. 7 at 11 and Resp't Ex. 3 at 9-12), instead of in his direct appeal, and trial court error is not a cognizable post-conviction claim.

"Issues that could have been raised on direct appeal -- even if constitutional claims -- may not be raised in post-conviction motions, except where fundamental fairness requires

---

617, 619 (Mo. Ct. App. 1989); see also **State v. Morrow**, 941 S.W.2d 19, 21 (Mo. Ct. App. 1997); Mo. Rev. Stat. § 565.110, Comment to 1973 Proposed Code ("How much movement or confinement is needed as a proper basis for kidnapping cannot be defined precisely as it will vary according to the circumstances").

otherwise and only in rare and exceptional circumstances." **State v. Tolliver**, 839 S.W.2d 296, 298 (Mo. 1992) (en banc). Issues pertaining to the right of self-representation and due process should be raised on direct appeal. **Phillips v. State**, 214 S.W.3d 361, 364-65 (Mo. Ct. App. 2007) (challenge to the denial of the right to self-representation should have been raised in direct appeal). Additionally, challenges to the propriety of a trial court's determination whether or not a waiver is proper are not cognizable in a post-conviction proceeding. See **Luster v. State**, 10 S.W.3d 205, 216 (Mo. Ct. App. 2000) (challenge regarding trial court's failure to question the defendant about his waiver of the right to a jury trial was not cognizable in a post-conviction proceeding). The appellate court in the post-conviction proceedings found that allegations of trial court error are not cognizable in post-conviction proceedings, and did not further address the merits of this claim.

Finding that the state appellate court failed to address the merits of ground two due to a procedural rule, this Court must determine "whether the state's procedural bar was 'adequate' to preclude [federal habeas] review." **Francis**, 557 F.3d at 898. "'Ordinarily, violation of firmly established and regularly followed state rules . . . will be adequate to foreclose review of a federal [habeas] claim . . . .'" **Id.** (quoting Lee v. Kemna, 534 U.S. 362, 376 (2002)) (first two alterations in original). "[F]ederal courts should not consider whether the state court *properly* applied its default rule to the claim; federal courts do not sit to correct a state court's application of its ordinarily adequate procedural rules . . . ." **Clemons v. Luebbers**, 381 F.3d 744, 750 (8th Cir. 2004). Petitioner has not suggested that this rule

is not firmly established and regularly followed by the state appellate court. Therefore, ground two for habeas relief is procedurally defaulted.

Petitioner argues the claim in ground two is not procedurally barred because he presented the issue in a motion to recall the mandate, filed on October 14, 2005, after the direct appeal and the post-conviction proceeding. (<u>See</u> pages 1-14 of the Appendix attached to the Petition [Doc. 2-1 at 3-16].) That motion to recall the mandate includes Petitioner's argument that the trial court's consideration of his waiver of counsel did not comply with the constitutional requirements set forth in **Von Moltke v. Gillies**, 332 U.S. 708, 724 (1948) (plurality opinion), or **Faretta v. California**, 422 U.S. 806, 835 (1975). (<u>See</u> pages 4, 7 and 8 of the Appendix attached to the Petition [Doc. 2-1].) The appellate court denied this motion to recall on May 9, 2006, without explanation. <u>See</u> Docket Sheet at page 10 for **State v. Brock**, No. ED81534 (Mo. App. E.D.) as reported at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited on Sept. 4, 2009). Respondents have not addressed this argument.

While the Missouri Supreme Court has stated that a court may recall its mandate when to remedy a deprivation of a criminal defendant's federal constitutional rights or if its prior decision "directly conflicts with a United States Supreme Court decision upholding the rights of the accused," **State v. Whitfield**, 107 S.W.3d 253, 265 (Mo. 2003) (en banc) (internal quotation marks omitted) (quoting <u>State v. Thompson</u>, 659 S.W.2d 766, 768-69 (Mo. 1983) (en banc)) (recalling a mandate upon finding its earlier opinion was in conflict with a Supreme Court ruling) , this Court finds the motion to recall the mandate filed by Petitioner

does not avoid application of the procedural bar. This is because the Supreme Court cases on which Petitioner relied in his motion to recall the mandate, and now in ground two, were more than thirty years old at the time he filed his direct appeal and, therefore, could have been presented at the time of the direct appeal but were not. Cf. **Whitfield**, 107 S.W.3d 253 (recalling a mandate based upon its earlier decision's conflict with a recently issued United States Supreme Court decision); **Cole v. Roper**, 579 F. Supp.2d 1246, 1271-72 (E.D. Mo. 2008) (finding it proper to address the merits of a habeas claim that was presented in a motion to recall the mandate based on a United States Supreme Court decision issued six months after the Missouri Supreme Court's affirmance of the post-conviction proceeding). A contrary decision, one concluding that Petitioner's motion to recall the mandate was sufficient to present the issue in ground two to the state courts, would render meaningless the state's requirement that trial court errors, constitutional and otherwise, be presented on direct appeal, especially in instances like this case when the United States Supreme Court cases supporting the claim of trial court error have been available to the litigant for a long period of time; and would make a motion to recall the mandate a form of obtaining relief more available than seems to be allowed by state law.

To the extent this Court should consider Petitioner's motion to recall the mandate as properly presenting the claim in ground two to the state appellate court, the Missouri Court of Appeals did not refer to federal law in denying the motion, so this Court does not "apply the presumption that the court based its decision on federal law." **Jones v. Jerrison**, 20 F.3d 849, 856 (8th Cir. 1994). Under the circumstances, it is "likely [that the state appellate court]

denied the motion on the ground that [Petitioner] failed to raise it earlier . . . [and] violated a state procedural rule." **Id.** (citations omitted); but see **Carter v. Bowersox**, 265 F.2d 705, 712 (8th Cir. 2001) (Missouri Supreme Court's summary denial of motion to recall the mandate is presumed to have been on the merits for purposes of habeas review). Petitioner has not suggested that this procedural rule is not firmly established and regularly followed by the state appellate court. Therefore, in the alternative, the state court did not address the federal claim in ground two on the merits due to the failure to comply with state procedural rules, and federal habeas review of that claim is barred. See **Jones**, 20 F.3d at 853.

Respondents urge Petitioner failed to present on direct appeal claims that mirror the claims in grounds three and five of the habeas petition. For ground three, Petitioner alleges the trial court violated his "federal right to have the court look into the waiver" because it did not conduct another hearing as requested by Petitioner. (Pet. at 6 [Doc. 2 at 5.) For ground five, Petitioner alleges the trial court erred when it allegedly required him to choose between either proceeding *pro se* without funding to present his defense or proceeding with stand-by counsel or a public defender and the attendant resources associated with such representation. (Pet. at 6A [Doc. 2 at 6].)

As noted earlier, "[i]ssues that could have been raised on direct appeal -- even if constitutional claims -- may not be raised in post-conviction motions, except where fundamental fairness requires otherwise and only in rare and exceptional circumstances." **Tolliver**, 839 S.W.2d at 298. Issues pertaining to the right of self-representation and due process should be raised on direct appeal. **Phillips**, 214 S.W.3d at 364-65 (challenge to the

denial of the right to self-representation should have been raised in direct appeal). Additionally, challenges to the propriety of a trial court's determination whether or not a waiver is proper are not cognizable in a post-conviction proceeding. See **Luster**, 10 S.W.3d at 216 (challenge regarding trial court's failure to question the defendant about his waiver of the right to a jury trial was not cognizable in a post-conviction proceeding).

Neither of these grounds were presented to or addressed by the appellate court on direct appeal. (See Resp't Exs. 3 and 5.) These grounds present issues of trial court error, issues that should have been presented on direct appeal. Because Petitioner did not present them on direct appeal, grounds three and five are procedurally defaulted. See **Sweet**, 125 F.3d at 1150; **Kennedy**, 969 F.2d at 116.

Petitioner urges these grounds are not defaulted because they were presented to and resolved by the state motion court (Resp't Ex. 6 at 23, 151-52, 158-60). Petitioner acknowledges he failed to brief the claims in his post-conviction appeal (Pet'r Traverse at 5 [Doc. 18]), but argues the appellate court summarily denied those claims when it denied ineffective assistance of appellate counsel claims purportedly presented by Petitioner. (Pet'r Traverse at 5-6 [Doc. 18].) Grounds three and five in the habeas petition, however, do not raise ineffective assistance of appellate counsel claims but rather claims that the trial court erred in resolving issues pertaining to Petitioner's self-representation. Because Petitioner did not present these claims of trial court error to the state appellate court on direct appeal, the claims set forth in grounds three and five are procedurally defaulted.

Respondents also urge that the claim in ground six is procedurally barred because it should have been presented in Petitioner's post-conviction motion, but was not. For ground six, Petitioner alleges that his appellate counsel was ineffective in failing to provide the appellate court with proof that the vindictive prosecution issue was preserved by showing the timely filing of his motion for new trial on May 9, 2002, and in failing to advance other preserved federal claims. (Id.)

The part of ground six alleging appellate counsel was ineffective in failing to provide the appellate court with proof that the vindictive prosecution issue was preserved, by showing the timely filing of Petitioner's motion for new trial, was presented in paragraph 8(b) of Petitioner's amended post-conviction motion (Resp't Ex. 6 at 25.) The issue was not, however, pursued in the post-conviction appeal (see Resp't Ex. 7) or addressed by the post-conviction appellate court (see Resp't Ex. 9). It is not clear that the rest of the ineffective assistance of appellate counsel claim presented through ground 6 of the habeas petition was presented in the Rule 29.15 motion, and the record shows clearly that it was not presented in the post-conviction appeal. (Resp't Ex. 6 at 21-39; Resp't Ex. 7; Resp't Ex. 9.) Habeas claims for the ineffective assistance of counsel which are not presented in the Rule 29.15 motion or included in the post-conviction appeal are procedurally defaulted. **Interiano v. Dormire**, 471 F.3d 854 (8th Cir. 2006) (ineffective assistance of trial counsel claims which were not addressed by the motion court and were not presented in the post-conviction appeal were procedurally defaulted); see **Sweet**, 125 F.3d at 1150. The claim in ground six of the habeas petition is, therefore, procedurally defaulted.

Because Petitioner's claims in grounds one, two, three, five, and six are defaulted, the state courts are not available for consideration of these claims. **Clay**, 485 F.3d at 1039. If the state courts are closed to Petitioner, the defaulted claims may not be reached by a federal habeas court "unless [the petitioner] can meet strict cause and prejudice or actual innocence standards." **Collier**, 485 F.3d at 425 (internal quotation marks omitted) (quoting <u>Clemons</u>, 381 F.3d at 750); <u>accord</u> **Interiano**, 471 F.3d at 856; **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006).

"'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule.'" **Greer v. Minnesota**, 493 F.3d 952, 957 (8th Cir.) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)), <u>cert. denied</u>, 128 S.Ct. 672 (2007). There is no "'exhaustive catalog of [the] objective impediments,'" nor have "the precise contours of the cause requirement been clearly defined." **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999) (quoting <u>Murray</u>, 477 U.S. at 488). "At a minimum, however, [Petitioner] must show that 'something *external* to [him], something that cannot fairly be attributed to him,' caused the procedural default." **Id.** (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 753 (1991)) (second alteration in original).

Petitioner has not provided any cause for the procedural defaults pertaining to grounds one and two. There being no cause for those defaults, the question of prejudice need not be reached. <u>See</u> **Schawitsch v. Burt**, 491 F.3d 798, 804 (8th Cir. 2007) (finding no cause to

excuse a procedural default and not addressing the prejudice element before affirming the denial of a habeas claim of ineffective assistance of counsel on the grounds it was procedurally defaulted and there was no showing of cause to excuse the default).

With respect to grounds three, five, and six, Petitioner urges there is "cause" in that the state appellate court on direct appeal made a legal error in concluding Petitioner's motion for new trial was not timely filed, and then this error "permeated the post-conviction court's conclusion as well." (Pet'r Traverse at 7 [Doc. 18].) Petitioner acknowledges he did not pursue these claims in his post-conviction appeal and "abandoned [these] claims." (Id.) Petitioner provides no explanation of something external and not attributable to him that caused him to abandon the claims in his post-conviction appeal, or to fail to raise these claims in his direct appeal to the extent they are allegations of trial court error.

Petitioner's traverse might be read as presenting an argument that the change of the trial court docket sheet, after the direct appeal and post-conviction proceedings had ended, to reflect that the motion for new trial was timely filed on May 9, 2002, (see Pet'r Traverse at 7-8 [Doc. 18 at 7-8]) constitutes "cause" necessary to avoid the procedural default. Notably, there is no indication of how or why that change was made, or of how or why that change could not have been made in May 2002. Without more, this Court cannot conclude something external to Petitioner relating to the docket sheet constitutes the "cause" necessary to avoid the procedural default applicable to these grounds.

There being no "cause" for the default of grounds three, five, and six, the question of prejudice need not be reached. See **Schawitsch**, 491 F.3d at 804 (finding no cause to excuse

a procedural default and not addressing the prejudice element before affirming the denial of a habeas claim of ineffective assistance of counsel on the grounds it was procedurally defaulted and there was no showing of cause to excuse the default).

The Court may also reach the merits of the claims set forth in grounds one, two, three, five, and six if Petitioner shows actual innocence. **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007). To make the necessary showing of such innocence sufficient to excuse a procedural default, Petitioner must come forward with new evidence and then "show that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "Evidence is only 'new' if it was 'not available at trial and could not have been discovered earlier through the exercise of due diligence.'" **Id.** (quoting Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001)). When a petitioner does not present such new evidence, then the habeas court cannot consider the merits of the procedurally barred claim. **Id.** Petitioner has not made such a showing.

Accordingly, Petitioner's claims in grounds one, two, three, five, and six of his habeas petition are procedurally barred.

The Court has before it for consideration the merits of ground four, a claim which Respondents do not contend is procedurally barred. Additionally, the Court will address the merits of grounds one, two, three, five, and six, as an alternative resolution of those procedurally barred claims for habeas relief.

Standard of Review. Title 28 U.S.C. § 2254 mandates that a federal court grant habeas relief on a claim adjudicated by the state courts on the merits

> only if the adjudication by the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts," which factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence.

**Kenley v. Bowersox**, 275 F.3d 709, 711-12 (8th Cir. 2002) (quoting § 2254(d) and 2254(e)(1)); accord **Evans v. Rogerson**, 223 F.3d 869, 871 (8th Cir. 2000). A state appellate court's decision "will be 'contrary to' clearly established federal law if the controlling Supreme Court cases require a 'different outcome' or a 'particular result.'" **Mark v. Ault**, 498 F.3d 775, 784 (8th Cir. 2007) (citing Long v. Humphrey, 184 F.3d 758, 760 (8th Cir. 1999)). The decision will be an "unreasonable application" if it "'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" **Id.** at 786 (quoting Collier, 485 F.3d at 421) (alteration in original). This standard requires that the state court's application be "objectively unreasonable." **Id.** "It is not enough for the federal habeas court to conclude that, in its independent judgment, it would have applied federal law differently from the state court . . . ." **Id.** State court decisions are to be given "'the benefit of the doubt.'" **Id.** (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir.) (quoting

Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)), cert. denied 129 S.Ct. 158 (2008).  And, "'[t]o the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness . . . of the state court's treatment of the contested issue.'"  **Copeland v. Washington**, 232 F.3d 969, 974 (8th Cir. 2000) (quoting Long, 184 F.3d at 760-61) (alterations in original).

The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), cert. denied, 129 S.Ct. 1905 (2009), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004).  Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by the state trial court, state motion court, and the state appellate court.  See **Smulls**, 535 F.3d at 864.

Additionally, "the 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of [§ 2254's] standard."  **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (en banc); **Weaver v. Bowersox**, 438 F.3d 832, 839 (8th Cir. 2006) (quoting Brown, 371 F.3d at 462), cert. dismissed sub nom. Roper v. Weaver, 550 U.S. 598 (2007); **James v. Bowersox**, 187 F.3d 866, 869 (8th Cir. 1999).  A state court's summary decision may be presumed to be on the merits for purposes of habeas review.  **Carter**, 265 F.3d at 712.

Sufficiency of the Evidence of Kidnapping.    For ground one, Petitioner claims the State failed to produce sufficient evidence establishing beyond a reasonable doubt the "substantial period" element of the kidnapping charge, in violation of his constitutional right to due process, citing **Jackson**, 443 U.S. at 324.  (Pet. at 5 [Doc. 2 at 4].)  Respondents argue that ground one fails on the merits because, while Missouri courts "have not yet . . . provide[d] a bright-line rule in regard to the temporal quantity which must exist in order to find a 'substantial period' has passed," Missouri courts look to the facts of each case and not just the time that has elapsed, and, here, the facts establish that Petitioner confined Cahill for a "substantial period."  (Resp't Br. at 10 [Doc. 7 at 10].)

Due Process and the Sixth Amendment "require criminal convictions  to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." **United States v. Gaudin**, 515 U.S. 506, 510 (1995); **Johns v. Bowersox**, 203 F.3d 538, 543 (8th Cir. 2000) (quoting Gaudin, 515 U.S. at 510). Therefore, a petitioner is entitled to habeas corpus relief under § 2254 "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." **Jackson**, 443 U.S. at 324; **Nance**, 392 F.3d at 289-90 (quoting Jackson, 443 U.S. at 324)).  The relevant question in analyzing such a claim is

> whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

**Jackson**, 443 U.S. at 319 (citation omitted); **Skillicorn v. Luebbers**, 475 F.3d 965, 977 (8th Cir.) (quoting Jackson, 443 U.S. at 319), cert. denied, 128 S.Ct. 297 (2007).

The scope of habeas review of such a claim is "extremely limited." **Skillicorn**, 475 F.3d at 977. The court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and . . . must defer to that resolution." **Whitehead v. Dormire**, 340 F.3d 532, 536 (8th Cir. 2003) (quotation marks omitted) (quoting Sexton v. Kemna, 278 F.3d 808, 814 (8th Cir. 2002)). Additionally, the federal habeas court may not make its own determination of witness credibility, for that determination is for the state court trier of fact. **Robinson v. LaFleur**, 225 F.3d 950, 954 (8th Cir. 2000). Eyewitness testimony to the crime charged may be sufficient to satisfy due process, due to the assumption the jury believes the witness's story. See **Tibbs v. Florida**, 457 U.S. 31, 45 n. 21 (1982) (noting that, "[i]f the jury believed the [eyewitness's testimony], the State's presentation was more than sufficient to satisfy due process"); **Loeblein v. Dormire**, 229 F.3d 724, 726 (8th Cir. 2000) ("A victim's testimony is, by itself, normally sufficient to sustain a conviction").

With respect to the kidnapping charge in Count I, Petitioner was charged with unlawfully confining Cahill without her consent for a substantial period, for the purpose of terrorizing her, on December 22, 2000. (Resp't Ex. 2 at 19.) Cahill and her minor son testified, in particular to the events of the night of December 22, 2000, (Resp't Ex. 1 at 297-

309; 345-49; 359-60; 369-73; 399-407, 410), as did Petitioner (<u>id.</u> at493-500, 519-30, 532, 533-35), and an excerpt from the tape recording of Petitioner's pre-trial interview of Cahill was played for the jury (<u>id.</u> at 547-50).  The sequence of events, as set forth by the appellate court on direct appeal, was conveyed through that testimony, although the length of time of the December 22, 2000, incident was not explicitly disclosed (<u>see</u> <u>id.</u> at 347, 550).  It is reasonable that a person being assaulted and held against her will, as well as others involved in that incident, would not be able to testify to the length of time of that incident.  The inability to provide direct evidence of the duration of the incident does not preclude a jury from concluding, beyond a reasonable doubt, that a confinement was for a substantial period as required by the kidnapping statute.

In addressing what constitutes a substantial period for kidnapping, the Missouri Court of Appeals noted the inquiry was whether there was any increased risk of harm or danger from the movement or confinement that was not present as a result of the other offense, and the "amount of confinement necessary to constitute kidnapping varies according to the circumstances of each case."  **State v. Morrison**, 980 S.W.2d 332, 333-34 (Mo. Ct. App. 1998).  The court in **Morrison** did not expressly address the length of time the victim was confined but found evidence sufficient to establish confinement for a substantial time when the evidence showed the victim was confined in "her home and forced . . . to sign blank checks" and the defendant disconnected the telephone and tied the victim to a chair with electrical tape, although the victim "testified that the tape was loose and she was able to free herself within minutes after the defendant . . . left."  **Id.** at 334.

43

Petitioner counters that the "incident [in this case] began and ended quickly," he "did not confine [Cahill] to be able to better . . . effectuate the assault," and his confinement of Cahill "did not exceed that normally incidental to the commission of third degree assault." (Pet'r Traverse at the second page marked 10 and 11 [Doc. 18 at 10, 11].)

To the extent these arguments focus on the testimony and evidence presented during trial, those arguments "while appropriately made to a jury, are unconvincing here." **Nance**, 392 F.3d at 290. A jury is "not required to credit . . . testimony [supporting a petitioner's version of events] when other evidence support[s] the state's case." **Whitehead**, 340 F.3d at 537. This Court may not make credibility determinations and must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state. **Id.** at 536; **Robinson**, 225 F.3d at 954. Additionally, the Missouri Court of Appeals on direct appeal explicitly found that Petitioner's confinement of Cahill "increased the risk of even more serious criminal activity and greater harm and danger" to her; "made her escape more difficult and [Petitioner]'s criminal activity less visible"; and "was more than incidental to the assault." (Resp't Ex. 5 at 5-6.) These determinations are supported by the record and are not erroneous or unreasonable. To the extent these determinations are factual, they are entitled to the presumption of correctness.

In support of his position, Petitioner cites to **State v. Brown**, 824 S.W.2d 924 (Mo. Ct. App. 1992), urging the appellate court in that case "found that the defendant confined the victim for a significant period of three hours and this was sufficient to demonstrate the kidnapping element 'for a substantial period.'" (Pet'r Traverse at the second page marked 10

[Doc. 18 at 11].)  While that case did involve a confinement of three hours that was characterized by the court as a "significant period," **id.** at 928, the opinion discussed both the length of the confinement and the circumstances surrounding the confinement to resolve the point on appeal which challenged whether the incident had a purpose to inflict injury or terrorize the victim.  **Id.** at 926, 928.  **Brown** does not require a finding of a three hour confinement in order to satisfy the "substantial period" element of kidnapping.  Nor does the opinion in that case set forth a minimum amount of time required for a confinement to satisfy the "substantial period" element of a kidnapping charge.

Here, Petitioner beat Cahill in multiple rooms of the home in the presence of Cahill's minor son, who made efforts to stop the assault, then left the scene to get someone to call the police, and then returned to the scene and waited for the arrival of the police, and throughout this time Petitioner confined and assaulted Cahill.  There is substantial evidence to support the jury's conclusion, beyond a reasonable doubt, that Petitioner confined Cahill for a substantial period.

To the extent this Court may address the merits of ground one challenging the evidence of the kidnapping on December 22, 2000, the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law; and the state court's decision was not based on an unreasonable determination of the facts in light of the evidence. The claim in ground one that Petitioner's kidnapping conviction violates his right to due process in that it is not based on sufficient evidence that Cahill was confined for a "substantial period" is denied.

For ground two, Petitioner alleges that his waiver of the right to counsel was invalid because, prior to the waiver, the trial court failed thoroughly to undertake a colloquy he alleges is federally required, including discussing the elements of the charges, the offenses included within the charges, possible defenses and mitigating circumstances, and the disadvantages of self-representation. (Pet. at 5 [Doc. 2 at 4].) Respondents argue this point lacks merit in that the circumstances show Petitioner's waiver of counsel was made knowingly, voluntarily, and intelligently; and no "specific litany" is required for such a waiver. (Resp't Br. at 12.)

It is well established Federal law that the Sixth Amendment grants a defendant the right to self-representation. **United States v. Kiderlen**, 569 F.3d 358, 364 (8th Cir. 2009) ("The Sixth Amendment grants an accused both the right to counsel and the alternative right to proceed *pro se*"); see **Faretta**, 422 U.S. at 820, 821 ("[t]o thrust counsel upon the accused, against his considered wish, . . . violates the logic of the [Sixth] Amendment" and "[t]he Sixth Amendment, when naturally read, . . . implies a right of self-representation"). A defendant in a criminal case may proceed without counsel when the defendant knowingly, intelligently, and voluntarily elects to forgo the "traditional benefits associated with the right to counsel." **Id.** at 835; **United States v. Edelmann**, 458 F.3d 791, 808 (8th Cir. 2006); **Page v. Burger**, 406 F.3d 489, 494 (8th Cir. 2005). If a criminal defendant proceeding *pro se* has not received adequate warnings of the potential consequences of self-representation, "the purported waiver of the right to counsel is invalid." **Page**, 406 F.3d at 494.

A defendant may "competently and intelligently . . . choose self-representation, [if he is] made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)]." **Faretta**, 422 U.S. at 835. A specific warning by the trial court on the dangers and disadvantages of self-representation is not absolutely necessary if the record demonstrates the defendant has the knowledge from other sources. **Ferguson v. Bruton**, 217 F.3d 983, 985 (8th Cir. 2000) (per curiam) (citing Meyer v. Sargent, 854 F.2d 1110, 1114 (8th Cir. 1988)). Moreover, there is no

> prescribed . . . formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.

**Iowa v. Tovar**, 541 U.S. 77, 88 (2004) (waiver in a case in which the defendant pleaded guilty). The court reviews the entire record to ascertain whether the accused was made sufficiently aware of his right to counsel and the possible consequences of waiving counsel in light of the particular facts and circumstances of the case, including the background, experience, and conduct of the defendant, and keeping the fundamental fairness of the challenged proceeding as the ultimate focus of the inquiry. **Id.** (citing Meyer, 854 F.2d at 1114); accord **Kiderlen**, 569 F.3d at 367-68.

The United States Court of Appeals has observed that, in **Faretta**, supra, the Supreme Court upheld a waiver of counsel

where the record showed that the defendant was 'literate competent, and understanding,' the trial judge had warned the defendant that the judge thought it was a mistake not to accept the assistance of counsel, and [the judge warned the defendant] that the defendant would be required to follow all the rules of trial procedure.

**Kiderlen**, 569 F.3d at 364. In **Kiderlen**, the Eighth Circuit upheld the waiver of counsel where, in relevant part, the court advised the defendant of the charges and penalties and "responded appropriately to questions that [the defendant] raised about them," and where defendant had experience with the criminal justice system, submitted questions for *voir dire*, exercised strikes for cause and peremptory strikes, raised objections at trial, and cross-examined witnesses. **Id.** at 366. The Eighth Circuit concluded that the defendant's "performance at trial . . . demonstrate[d] that he was able to grasp the charges against him [and] appreciate the consequences of his decision to proceed *pro se*." **Id.** See also **United States v. Mentzos**, 462 F.3d 830, 838 (8th Cir. 2006) (finding a waiver of counsel proper where the record disclosed the defendant had education beyond high school, "was articulate, and had a sense of how to put on a defense," and had "participated in the court's *voir dire* of the jury, exercised his peremptory challenges, and raised objections during the trial, [which indicated] that he was 'able to grasp the nature of the charges against him and that he had the intellectual capacity required to understand the consequences of his decision'") (quoting United States v. Patterson, 140 F.3d 767, 775 (8th Cir. 1998)), cert. denied, 549 U.S. 1359 (2007).

The facts and circumstances of this case establish that Petitioner's waiver of counsel was constitutional. The record reveals that, during questioning by two different judges, which occurred both before and after the filing of the June 2001 indictment, Petitioner advised the trial court that he had completed a GED and attended a couple of years of college (Resp't Ex. 6 at 52); he had no physical or mental health problem that would affect him in any way in the handling of his defense, and had never been diagnosed with a mental health problem (id.); understood that the sentences could run concurrently or consecutively (id. at 54), and understood the charges and range of punishment applicable to each count in the June 2001 indictment as reported by the prosecutor, as well as the prosecutor's twenty year recommendation (Resp't Ex. 10 at 10-12). Petitioner also told the trial court that he had participated in a felony trial before and had witnessed the process of picking a jury, eliciting evidence, and cross-examining witnesses (id. at 55-56); and he understood there are rules of procedure during a trial and that he would be held to the same standard that applies to a lawyer respecting the rules and procedures (id. at 61; see also Resp't Ex. 1 at 11). Petitioner also acknowledged that, as an indigent defendant, he had the right to have the court appoint counsel for him and a right to an attorney present throughout the proceedings. (Id. at 65; Resp't Ex. 10 at 4). The trial court explained the availability of stand-by counsel, with the availability of the resources of the public defender's office, which Petitioner clearly refused. (Resp't Ex. 10 at 5, 6.) Moreover, during the July 2001 hearing, after Petitioner questioned the time and effort a public defender would spend on his case, Judge Dowd stated:

> Well, that doesn't quite make sense to me, frankly[.] The public defenders that I've seen, they're incentive is that they are officers of the court and they have to zealously represent their clients. And from my experience here that's exactly what they do. They take the time that's necessary to develop the defenses appropriate to each particular case, and they do whatever it takes to . . . put on the best defense.
>
> So, frankly, my personal opinion is that your, it's a miscalculation on your part to want to proceed as your own counsel, representing yourself.

(Resp't Ex. 10 at 10-11.)

At a pre-trial conference in February 2002, where Petitioner advised he was seeking funding for investigative services, to conduct depositions, and for expert witnesses, the trial court denied Petitioner's funding requests after determining that the State was not planning on presenting expert witnesses at trial, except in relevant part a physician who had examined Cahill after the December 22, 2000 incident, and Petitioner had copies of medical records relevant to that examination; that Petitioner had been examined by a court-appointed independent psychiatrist earlier in the proceedings and had not objected to the psychiatrist's report; that Petitioner had the police reports and other materials from the prosecutor, except for a statement by Cahill regarding the September 2, 2000 incident, which the prosecutor reported she would look for; that Petitioner would be provided the opportunity to conduct recorded interviews of witnesses under oath by telephone prior to trial at no cost to Petitioner; that Petitioner could subpoena places where he sought treatment to learn the identity of individuals he might be interested in presenting as witnesses, through subpoena forms provided by the trial court and service of those subpoenas by the Sheriff; and that Petitioner could submit questions for *voir dire*, which would be conducted in large part by

the trial court, with some questioning by the parties.  (See Resp't Ex. 1 at 1-2, 3,  5-17, 18-19, 20-21.)  At this conference, the trial court again mentioned to Petitioner that he was bound by the same rules that bound lawyers.  (Id. at 11.)

During trial, Petitioner participated in *voir dire* and the selection of a jury (Resp't Ex. 1 at 115-34), made an opening statement (id. at 142-45), cross-examined witnesses (see, e.g., id. at 164-69, 178-182, 311-68, 371-74, 402-13, and 443-45), made objections in front of the jury and had discussions at the bench after asking to approach the bench (see, e.g., id. at 189-92; 197; 357- 59 ), made and argued unsuccessful motions for mistrial (id. 216-22; 414-15), introduced exhibits (id. at 268, 448, 458, 537), presented witnesses (id. at 466-537), submitted a motion for judgment of acquittal (id. at 554, 556-58), participated in a discussion of the jury instructions (id. at 558-63), and presented closing argument (id. at 576-86). Throughout the proceedings, Petitioner's demeanor was not disruptive and Petitioner was articulate.  Petitioner's participation in the proceedings indicated he understood the charges and the proceedings, and understood the consequences of his decision to proceed *pro se*.

The record supports the state court's findings that Petitioner's waiver of counsel was voluntary and knowing.  (See, e.g., Resp't Ex. 2 at 16; Resp't Ex. 6 at 156-58.)  The state court's conclusion that Petitioner voluntarily and intelligently waived his right to counsel is not an unreasonable application of clearly established federal law as interpreted by the United States Supreme Court.  See **Kiderlen**, supra; **Mentzos**, supra.

Petitioner argues that the trial court's questioning of Petitioner was insufficient because it did not include discussion of the elements of the charges, the statutory offenses

included within them, the range of allowable punishments, possible defenses to the charges, mitigating circumstances, and other facts he urges were essential to his understanding of the whole matter, as set forth in **Von Moltke**, 332 U.S. at 724.

The Eighth Circuit recently considered and rejected this argument in **Kiderlen**, supra. There the Eighth Circuit concluded in relevant part that

> [n]either the Supreme Court nor this court . . . has adopted the Von Moltke plurality opinion in all of its particulars, and we reject [the] contention that a waiver of the right to counsel must exhibit all of the features discussed in Wilkins [v. Bowersox, 145 F.3d 1006, 1012-13 (8th Cir. 1993), which relied on the factors in Von Moltke to find a waiver of counsel was not valid,] before it is deemed knowing and voluntary. . . . [T]he waiver deemed valid in Faretta itself, as well as those in [United States v. ]Abdul-Aziz, [486 F.3d 471, 475 (8th Cir. 2007)], Mentzos, [supra, United States v.] Mahasin, [442 F.3d 687, 691-92 (8th Cir. 2006)], and Patterson, [140 F.3d at 774-76,] were effected without discussion between the trial court and the defendant of such matters as lesser included offenses, defenses to the charges, and mitigating circumstances that might be presented to the jury. Our decision in Meyer . . ., 854 F.2d at 1114, even upheld a waiver of counsel without a specific warning about the disadvantages of self-representation, where other evidence showed that the defendant had the necessary knowledge of the dangers and disadvantages of self-representation, and the record indicated that the motion to proceed *pro se* was an obstructionist tactic employed by the defendant during trial. Id. at 1114-15. Wilkins, therefore, is best understood as a case-specific application of the general principle that our assessment of a waiver [of counsel] depends "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused," Meyer, 854 F.2d at 1114 . . . .
>
> . . . We are satisfied that the district court adequately warned Kiderlen of the dangers of self-representation, and that Kiderlen understood them. We agree with the district court that Kiderlen's waiver of the right to counsel was knowing, voluntary, and intelligent.

**Kiderlen**, 569 F.3d at 367-68. This decision is on point, and supports the determination that Petitioner's waiver of counsel was constitutional even in the absence of an explicit discussion

of matters such as lesser included offenses, defenses to the charges, and mitigating circumstances. Under the circumstances, Petitioner's waiver of counsel was knowing, voluntary, and intelligent, and did not violate Petitioner's constitutional rights.

To the extent this Court may address the merits of ground two challenging Petitioner's waiver of counsel on the ground the trial court failed to discuss the elements of the charges, the offenses included within those charges, defenses, and possible mitigating circumstances, and the disadvantages of self-representation, the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law; and the state court's decision was not based on an unreasonable determination of the facts in light of the evidence. The claim in ground two is denied.

In ground three, Petitioner alleges the trial court violated his "federal right to have the court look into the waiver," upon Petitioner's unsuccessful motion for pretrial conference, because the court had not explained that the waiver of counsel included a waiver of "all funding to building a defense" and the court did not explain what the "basic tools of an adequate defense were." (Pet. at 6 [Doc. 2 at 5].) Petitioner contends the changes supporting further inquiry into his waiver of counsel were that new charges were filed in June 2001, in Case No. 011-0002189, after the first waiver in March 2001, in Case No. 001-0003912; he made several unsuccessful requests for public resources to assist with his defense; and he sought further consideration of the waiver in a request for a conference to clarify the waiver

filed within a month prior to the start of trial (Resp't Ex. 2 at 182-86).[17] Respondents counter that no hearing was required because the waiver issue had been addressed and resolved and nothing was brought to the trial court's attention to require further inquiry.

As noted above in the discussion of ground two, there is no particular litany required before a defendant in a criminal case may waive counsel, and in this case Petitioner's waiver of counsel was knowing, intelligent, and voluntary. "If th[e waiver of counsel is] made competently, intelligently and with a full understanding of . . . rights, [there is] no reason why the court at each subsequent proceeding[] should go through the mere ceremony of again inquiring if the defendant knew his rights and was then again willing to waive them." **Davis v. United States**, 226 F.2d 834, 840 (8th Cir. 1955). The Eighth Circuit noted in **Davis** that further inquiry into a defendant's waiver of counsel might be warranted if something happened to justify further inquiry, but without such an occurrence "[t]here was indeed an implied waiver of counsel as to any proceedings subsequent to" the original waiver. **Id.**

> If this were not true, it would mean that in all criminal proceedings where the defendant competently waived the right to counsel and nothing happened in the meantime, such as an unreasonable lapse of time, newly discovered evidence which might require or justify advice of counsel, new charges brought, a request from the defendant, or similar circumstances, he would nevertheless have to be interrogated in the same fashion on each subsequent step therein. That would be neither good law nor good sense.

**Id.**

_____

[17] Petitioner also mentions the public defender's office statement in a brief in Case No. 001-0003912, that "[a] thorough examination to determine [Petitioner]'s understanding of the perils of self-representation did not occur" was a change requiring further inquiry into the waiver. This statement in and of itself was not a change of circumstance supporting additional inquiry into Petitioner's waiver.

Here, the trial court examined Petitioner in depth about his desire to represent himself at a hearing on March 29, 2001. (Resp't Ex. 6 at 50-71.) Then, after new charges were subsequently filed and the trial court stated it was considering the case with the new charges as a continuation of the case involving the prior charges, the trial court again questioned Petitioner in depth about his desire to proceed *pro se*. (Resp't Ex. 10 at 3-14.) After the trial court upheld Petitioner's right to self-representation and denied Petitioner's requests for funding and other resources to assist with his defense, Petitioner did not ask the court for the assistance or appointment of an attorney and reiterated his desire to represent himself. (<u>See</u>, <u>e.g.</u>, Resp't Ex. 2 at 13-16; Resp't Ex. 10 at 15-17, 19, 21; Resp't Ex. 2 at 56 ("[Petitioner] . . . contends that he is competent to represent himself . . . and . . . presents a running objection to any 'standby' counsel or other court-appointed means to deter, mar, or otherwise interfere with his constitutional right to self-representation").) Moreover, while Petitioner's funding requests were denied, the trial court made arrangements for witnesses and evidence to be available to Petitioner prior to and during trial, including making sure Petitioner had the police and medical reports prior to trial, providing Petitioner with the opportunity to have recorded telephone conversations with witnesses prior to trial and access to any transcripts prepared of those recorded interviews, directing that Petitioner's subpoenas be served with "all costs waived," and directing the staff at the institution housing Petitioner to "afford [Petitioner] access to tape recorded depositions in this cause and a tape player at the earliest possible time . . . [and] to send tape recorded depositions to court [on a specified date] with

the [Petitioner]."  (See, e.g., Resp't Ex. 1 at 10-12, 17, 27, 35-36; Resp't Ex. 2 at 177, 250, 280.)

Importantly, even in his request for a pretrial conference to clarify the waiver, Petitioner did not seek counsel; in fact, Petitioner explicitly stated in bold type that he "pray[ed] that the trial court not construe this request as an attempt to seek the other path of representation." (Resp't Ex. 2 at 183.)  Then, at a conference just prior to the start of trial and after Petitioner had filed his request for a conference to clarify the waiver, Petitioner reiterated his desire to continue his *pro se* status in response to a question by the trial court asking Petitioner if he wanted to withdraw his waiver of counsel.  (See Resp't Ex. 1 at 26). The trial court then denied the motion as moot.  (Id. at 35.)  Petitioner did not seek counsel or further challenge his waiver of counsel at any time during trial or sentencing.  (See Resp't Ex. 1.)  When Petitioner requested counsel to represent him on appeal, the trial court immediately appointed Petitioner counsel to pursue Petitioner's direct appeal.  (Resp't Ex. 1 at 614.)

Under the circumstances, the record does not reveal any substantial change in pretrial proceedings requiring another third in-depth inquiry into Petitioner's self-representation as suggested in Petitioner's request for conference to clarify Petitioner's waiver of counsel, which was filed within the month prior to trial (Resp't Ex. 2 at 182-86).  There is nothing of record to show any "facts or circumstances which would prevent the initial waiver of the right to counsel, knowingly and intelligently made, from extending to and being fully

effective" throughout the subsequent proceedings. **Panagos v. United States**, 324 F.2d 764, 765 (10th Cir. 1963).

Petitioner cites to **MacNeil v. Wisconsin**, 501 U.S. 171 (1991), for his position that a more complete inquiry into the waiver was needed after the new charges were filed in June 2001; in particular, Petitioner points to the Supreme Court's statement that the Sixth Amendment right to counsel is "offense specific." **Id.** at 175. The Court in **MacNeil** was not discussing a waiver of counsel, however, and instead was addressing whether the invocation of the Sixth Amendment right to counsel in one proceeding can constitute the invocation of a Fifth Amendment right to counsel precluding police-initiated interrogation on unrelated, uncharged offenses. **Id.** at 175. Those are not the circumstances here, and **MacNeil** does not mandate another inquiry into Petitioner's waiver of counsel.

To the extent this Court may address the merits of ground three alleging the trial court violated his "federal right to have the court look into the waiver," upon Petitioner's unsuccessful motion for pretrial conference, because the court had not explained that the waiver of counsel included a waiver of "all funding to building a defense" and the court did not explain what the "basic tools of an adequate defense were" (Pet. at 6 [Doc. 2 at 5]), the state court's decision not to pursue another inquiry into Petitioner's waiver of counsel was not contrary to, or an unreasonable application of, clearly established federal law; and the state court's decision was not based on an unreasonable determination of the facts in light of the evidence. The claim in ground three is denied.

For ground four, Petitioner claims the trial court erred in not conducting a hearing into Petitioner's motion to dismiss the kidnapping charge due to vindictive prosecution. (Id.) Petitioner contends the facts relevant to this ground for relief are those associated with the manner in which Petitioner was charged in Case No. 011-0002189 with more serious felony charges arising out of the September 2000 incident than had been pursued in the previously filed misdemeanor charges arising out of that incident and with a charge of kidnapping, which was more serious than the previously filed felonious restraint charge, pertaining to the December 2000 incident; and that those more serious charges were filed in June 2001 after he asserted his right to self-representation, which was granted on March 29, 2001, and made repeated requests in April, May, and June of 2001 (Resp't Ex. 6 at 75, 78, 80; Resp't Ex. 11 at 8-16) for public funding to assist with his defense. (Pet'r Traverse at 20-23 [Doc. 18 at 21-24].) Petitioner urges that the June 2001 indictment

> as a whole carried an aggregate punishment of 51 years plus life imprisonment as opposed to the aggregate punishment of 22 years under the former indictment, with the only intervening action on Petitioner's part being his waiving of counsel, proceeding *pro se*, and immediately filing numerous requests for resources to develop . . . his defense.

(Id. at 23.) Petitioner also points out the June 2001 charges arising out of the September 2000 incident were resolved by dismissal for improper venue and the granting of a judgment of acquittal on the kidnapping charge. (Resp't Ex. 1 at 34 and 602-03; see Resp't Ex. 2 at 200-01, 385.) Respondents argue that Petitioner has not satisfied his burden to establish prosecutorial vindictiveness.

"A prosecution designed solely to punish a defendant for exercising a valid legal right violates due process." **United States v. Leathers**, 354 F.3d 955, 961 (8th Cir. 2004); <u>see</u> **Bordenkircher v. Hayes**, 434 U.S. 357, 363 (1978) (due process is violated when a person is punished because "he has done what the law plainly allows him to do"). "[P]unishing a defendant for exercising his valid legal rights is impermissible prosecutorial vindictiveness." **United States v. Campbell**, 410 F.3d 456, 461 (8th Cir. 2005). The defendant has a heavy burden to show the prosecution was brought to punish the defendant for the exercise of a legal right; and prosecutors have broad discretion in enforcing criminal statutes. **Id.**

Prosecutorial vindictiveness may be established where the defendant has "objective evidence that the prosecutor's decision to seek a more severe sentence was intended to punish the defendant for the exercise of a legal right." **Id.** An example of such objective evidence "would be a prosecutor's statement that he or she is bringing a new charge in order to dissuade the defendant from exercising his or her legal rights." **Id.** at 462; <u>see</u> **United States v. Goodwin**, 457 U.S. 368, 380-81 (1982) ("there is no evidence in this case that could give rise to a claim of *actual* vindictiveness; the prosecutor never suggested that the charge was brought to influence the [defendant]'s conduct"). In **Campbell**, the Eighth Circuit found no objective evidence of vindictiveness in the fact the government opposed the defendant's motion for new trial and indicted the defendant on an additional count after the new trial was granted. **Campbell**, 410 F.3d at 462.

Here, Petitioner has not produced or alleged any objective evidence of vindictiveness. There is no allegation that the prosecutor stated the filing of the June 2001 indictment was

in response to Petitioner's pursuit of his defense without counsel or to Petitioner's requests for public funding to assist in his defense. The fact the State may have opposed Petitioner's requests for public funding and the fact the June 2001 indictment was filed after the trial court granted Petitioner's request to proceed without counsel are not circumstances constituting objective evidence of prosecutorial misconduct. See **id.**

A defendant also "is entitled to a presumption of vindictiveness where there exists a reasonable likelihood of vindictiveness, which may arise when prosecutors increase the number or severity of charges." **Id.** at 461. Only in rare instances does the presumption apply though, and it does not arise "just because action detrimental to the defendant was taken after the exercise of the defendant's legal rights; the context must also present a reasonable likelihood of vindictiveness." **Id.** at 462. An improper vindictive motive may be presumed "'only in cases in which a reasonable likelihood of vindictiveness exists.'" **United States v. Rodgers**, 18 F.3d 1425, 1430 (8th Cir. 1994) (quoting Goodwin, 457 U.S. at 373).

When a presumption of vindictiveness is suggested in a case where charges are changed prior to trial, the existence of a presumption is questionable. See **Goodwin**, 457 U.S. at 381.

> In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of the prosecution may not have crystallized. . . .

* * *

> . . . A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution.

**Id.** at 381, 382; <u>accord</u> **United States v. Beede**, 974 F.2d 948, 952 (8th Cir. 1992) (quoting <u>Goodwin</u>, 457 U.S. at 382). In **Goodwin**, the United States Supreme Court declined to apply a presumption of vindictiveness where a felony charge was added before trial to a misdemeanor charge after the defendant demanded a jury trial on the misdemeanor charge. **Goodwin**, 457 U.S. at 382-84. Specifically, the Supreme Court stated, "[t]he possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted." **Id.** at 384. Similarly, this Court concludes it is highly unlikely that a prosecutor would respond to Petitioner's desire to waive representation by counsel and Petitioner's requests for public funds by bringing charges not in the public interest solely to punish Petitioner; and no presumption of vindictiveness requiring rebuttal by the prosecutor exists.

Therefore, the trial court's decision to deny the motion to dismiss for prosecutorial vindictiveness without a hearing was proper and not contrary to or an unreasonable application of clearly established federal law. Nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence. The claim in ground four is denied.

For ground five, Petitioner alleges the trial court erred when it allegedly required him to choose between either proceeding *pro se* without funding to present his defense or proceeding with stand-by counsel or a public defender and the attendant resources associated with such representation. (Pet. at 6A [Doc. 2 at 6].) Petitioner specifically limits this ground to the actions of Judge Dowd during the July 2001 hearing. (Pet'r Traverse at 27, 29 [Doc. 18 at 30].) Respondents urge there was no constitutional violation because Petitioner does not have an absolute right to funding; and the denials of funding here were constitutional. There is no dispute that Petitioner was indigent throughout the underlying state court proceedings.

Petitioner cites **Simmons v. United States**, 390 U.S. 377, 394 (1968), as support for Petitioner's position that requiring him to choose either to have counsel with its resources or to have no counsel and fewer public resources unconstitutionally required Petitioner to surrender one constitutional right in order to assert another. In that case, the Supreme Court found, under the circumstances, that "it [was] intolerable that one constitutional right should have to be surrendered in order to assert another." **Id. Simmons** involved a situation where a defendant who wanted to testify at a motion to suppress evidence hearing in which Fourth Amendment issues were addressed faced a constitutional dilemma in that the testimony could be used against him at trial to establish guilt in violation of the Fifth Amendment's

privilege against self-incrimination.  **Id.** at 389-94.  Those circumstances are not present here.[18]

In Petitioner's case, it is questionable whether Petitioner faced an intolerable surrender of one constitutional right for another to the extent the trial court offered to provide Petitioner with an appointed attorney to either represent Petitioner or act as stand-by counsel, with the attendant resources available through counsel, or allowed Petitioner to proceed *pro se* and denied Petitioner's requests for public funding for resources to assist in the preparation and presentation of is defense.  See **State v. Armentrout**, 8 S.W.3d 99, 105 (Mo. 1999) (en banc).  While it is clear Petitioner had a right to represent himself under **Faretta**, supra, and its progeny, it is not clear that **Ake** required state funding of the depositions, expert(s), and investigator Petitioner requested of Judge Dowd.  When a criminal case involves an indigent defendant, the Fourteenth Amendment's due process guarantee of fundamental fairness requires the State to "take steps to assure that the defendant has a fair opportunity to present his defense" and to make "certain that [the defendant] has access to the raw materials integral to the building of an effective defense."  **Ake v. Oklahoma**, 470 U.S. 68, 76, 77 (1985) (a capital case); accord **Little v. Armontrout**, 835 F.2d 1240, 1243 (8th Cir. 1987) (en banc) ("While the state need not provide the indigent with all the tools the wealthy may buy, it must

---

[18] Notably, the circumstances here also do not present the conflict presented in **United States v. Kahan**, 415 U.S. 239 (1974) (per curiam), where an accused failed to disclose money in certain bank accounts when seeking the appointment of counsel due to indigency and the failure to report that money was subsequently admitted "as false exculpatory statements evincing [the accused]'s consciousness that the bank deposits were incriminating and as evidence of willfulness in making statements before the grand jury with knowledge of their falsity."  **Id.** at 241.

provide the defendant with the 'basic tools of an adequate defense.' <u>Britt v. North Carolina</u>, 404 U.S. 226, 227 . . . (1971)").  The decision whether something is a basic tool of an adequate defense that the State must provide to an indigent defendant depends on the circumstances.      In **<u>Ake</u>**, the Supreme Court specifically decided that the Constitution requires a State to provide an indigent defendant with the assistance of a psychiatrist on the issue of the defendant's sanity at the time of the offense "when [the] defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial." **<u>Ake</u>**, 470 U.S. at 74.  Importantly, the Court noted that "the indigent defendant [does not] ha[ve] a constitutional right . . . to receive funds to hire his own" psychiatrist, and left "to the State the decision on how to implement this right." **<u>Id.</u>** at 83.

Here, to the extent Petitioner advised Judge Dowd that he may wish to pursue a diminished mental capacity defense, Judge Dowd appointed a psychiatrist to examine Petitioner, the psychiatrist found no mental disease or defect and no support for a claim of diminished capacity, and Petitioner did not file any objection or response "to the examiner's conclusions."  (Resp't Ex. 10 at 17-21; Resp't Ex. 6 at 148, 153.)  Therefore, there was no denial by Judge Dowd of Petitioner's request for expert assistance in the consideration of a diminished capacity defense.

Petitioner urges Judge Dowd improperly denied Petitioner's motion for general assembly funding (Resp't Ex. 11 at 8-15), as well as a supplement to that motion (Resp't Ex. 2 at 40-52).  (Pet'r Traverse at 29 [Doc. 18 at 30].)  Judge Dowd heard a brief presentation by Petitioner on these motions during the July 2001 hearing, where Petitioner explained

(Resp't Ex. 10 at 15-17) he was seeking expenses for an investigator for documents and witnesses he did not know by name (id. at 17) and for depositions (id.). Judge Dowd denied the motions for funding during that hearing (id. at 17, 21) and granted Petitioner's request for the appointment of a psychiatrist (id. at 17-21; Resp't Ex. 2 at 68; see also Resp't Ex. 2 at 2). The docket sheet for the case reflects no further rulings by Judge Dowd. (See Resp't Ex. 2 at 2-12.)

In the Eighth Circuit, **Ake** requires that an indigent defendant in a non-capital case have other experts available as well, depending on "how important the scientific issue is in the case and how much help a defense expert could have given." **Little**, 835 F.2d at 1243 (hypnosis expert). The Eighth Circuit has "interpreted Ake to require the appointment of an expert only if the defendant shows 'a reasonable probability that an expert would aid in his defense, and that denial of expert assistance would result in an unfair trial.' Little . . . , 835 F.2d [at] 1244 . . . ." **Davis v. Norris**, 423 F.3d 868, 876 (8th Cir. 2005); accord **United States v. Rodriguez**, 2009 WL 2998103, at *6 (8th Cir. 2009). While this Court has not found case law applying this standard to an indigent petitioner's requests for deposition funding or for an investigator under **Ake**, it is reasonable to apply this standard to such requests. Here, Petitioner did not make a sufficient showing that the requested investigator and depositions would "aid in his defense, and that denial of [the requested] assistance would result in an unfair trial." **Little**, 835 F.2d at 1244.

Moreover, in reaching its decision in **Ake** the Supreme Court found consideration of three factors relevant:

The first is the private interest that will be affected by the action of the State. The second is the governmental interest that will be affected if the safeguard is to be provided. The third is the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided.

**Ake**, 470 U.S. at 77. As to the first factor, the Supreme Court found "[t]he private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk is almost uniquely compelling." **Id.** at 78. That analysis applies here as well. Neither the financial burden on a State to provide an indigent defendant with limited resources nor the State's interest in prevailing at trial, which "is necessarily tempered by its interest in the fair and accurate adjudication of criminal cases," or any interest the State may have in maintaining a strategic advantage over the defense, is substantial enough to support the denial of limited assistance to an indigent defendant "in light of the compelling interest of both the State and the individual accurate dispositions." **Id.** at 78-79. These considerations also apply here. Finally, in considering the third factor, the Supreme Court characterized the question as an "inquir[y] into the probable value of the . . . assistance sought, and the risk of error in the proceeding if such assistance is not offered." **Id.** at 79. At the time Judge Dowd considered these funding requests, this factor did not support the granting of the requests, especially because Petitioner was, at the time, in the process of being examined by a psychiatrist. After that examination was complete, the record is not clear that Petitioner presented the requests again until they were addressed by Judge Dierker.

In the February 2002 and pretrial conferences Judge Dierker addressed Petitioner's requests for funding of an investigator, for depositions, and for an expert, denying the

requests while, as noted in this Court's earlier discussion of Petitioner's habeas petition, providing Petitioner with alternatives including access to police reports and relevant medical reports, the issuance and service of subpoenas, and recorded telephone interviews of witnesses. (See, e.g., Resp't Ex. 1 at 1-20 and 20-39.) These alternatives constituted a proper decision by the State on how to implement Petitioner's rights under **Ake**. See **Ake**, 470 U.S. at 83.

This Court is not persuaded by Petitioner's argument that the Court should look no further than Judge Dowd's resolution of the requests to resolve the **Ake** issue here. See **Sargent v. Armontrout**, 841 F.2d 220, 223-24 (8th Cir. 1988). In **Sargent**, the Eighth Circuit found no **Ake** violation in a failure to provide the petitioner with a transcript of his co-defendant's trial, in relevant part, because the court reporter took the stand in petitioner's trial and read from her notes of the co-defendant's trial. **Id.** at 224. It, therefore, appears proper to consider subsequent trial court proceedings in an effort to resolve an **Ake** claim.

Finally, even assuming that Judge Dowd's denial of Petitioner's funding requests constitutes a violation of **Ake**, Petitioner "must show by a reasonable probability that the additional . . . funding would have aided his defense, and that the denial of funds resulted in an unfair trial." **Rodriguez**, 2009 WL 2998103, at *7. If no such showing is made, then the court does not abuse its discretion in denying funds. **Id.** Petitioner has not made such a showing here; nor, under the circumstances of the subsequent proceedings, does it appear that Petitioner could make a showing that there is a reasonable probability that additional funding would have aided his defense and that the denial of funds resulted in an unfair trial.

The denials of funding here did not present an unconstitutional dilemma between choosing to be represented by counsel, with the availability of resources, or choosing to remain *pro se* without access to the resources readily available to an attorney. The trial court provided Petitioner with the basic tools of an adequate defense, even though Petitioner's requests for funding were denied.

Therefore, the trial court's decisions to allow Petitioner to proceed *pro se* and to deny Petitioner's requests for funding were proper and not contrary to or an unreasonable application of clearly established federal law. Those rulings did not present Petitioner with an intolerable dilemma requiring Petitioner to surrender one constitutional right to enforce another constitutional right as proscribed by **Simmons**, 390 U.S. at 394. Nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence. The claim in ground five is denied.

For ground six, Petitioner alleges that his appellate counsel was ineffective in failing to provide the appellate court with proof that the claim for vindictive prosecution was preserved by showing the timely filing of his motion for new trial on May 9, 2002, and in failing to advance other preserved federal claims, specifically those set forth in grounds two, three, and five of his habeas petition. (Id.; Pet'r Traverse at 30 [Doc. 18 at 31].) Respondents counter that Petitioner's appellate counsel provided effective assistance in presenting three claims on appeal and not the claims now urged by Petitioner which lack merit.

It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal. See **Evitts v. Lucey**, 469 U.S. 387, 396-97 (1985);

**Douglas v. California**, 372 U.S. 353, 357-58 (1963). The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that set forth in **Strickland v. Washington**, 466 U.S. 668 (1984). **Smith v. Robbins**, 528 U.S. 259, 285 (2000); **Boliek v. Bowersox**, 96 F.3d 1070, 1073 (8th Cir. 1996). Petitioner must show that the appellate attorney's performance was below the reasonable standard of competence and that there is a reasonable probability that the result would have been different absent this deficient performance. See **Strickland**, 466 U.S. at 687; **Gee v. Groose**, 110 F.3d 1346, 1352 (8th Cir. 1997).

Appellate counsel is expected to winnow the issues on appeal to highlight the most meritorious issues and eliminate the sure losers. See **Jones v. Barnes**, 463 U.S. 745, 751-52 (1983); **Gee**, 110 F.3d at 1352; **Pollard v. Delo**, 28 F.3d 887, 889 (8th Cir. 1994). Appellate counsel has no duty to raise every non-frivolous claim on appeal. **Jones**, 463 U.S. at 751; see also **Parker v. Bowersox**, 94 F.3d 458, 462 (8th Cir. 1996) ("To perform competently under the Sixth Amendment, counsel is neither required nor even advised to raise every conceivable issue on appeal"). "When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims." **Link v. Luebbers**, 469 F.3d 1197, 1205 (8th Cir. 2006), cert. denied, 128 S.Ct. 488 (2007). Thus, an attorney's decision not to raise an unwinnable issue on appeal is an important strategic decision in competent appellate advocacy, and does not constitute ineffective assistance of

appellate counsel.  See **Jones**, 463 U.S. at 751-54; **Horne v. Trickey**, 895 F.2d 497, 500 (8th Cir. 1990).

Here, Petitioner asserts his appellate attorney was ineffective in failing to show the appellate court his motion for new trial was timely filed so the appellate court would consider the merits of the prosecutorial vindictiveness issue, and in failing to raise on direct appeal the claims presented in grounds two, three, and five of his habeas petition.  This Court has determined in its discussion of those grounds for habeas relief, as well as the prosecutorial vindictiveness issue, that the claims lack merit.  Therefore, Petitioner's appellate attorney's failure to raise those issues in the direct appeal, and any failure of counsel to establish the timeliness of the motion for new trial, do not constitute the ineffective assistance of counsel.  Additionally, when a petitioner's claim under **Ake** would not have succeeded on appeal, then the petitioner "suffer[s] no prejudice from his appellate lawyer's failure to raise the claim." **Boliek**, 96 F.3d at 1075.

Therefore, any decision by the state court that Petitioner's appellate attorney did not provide ineffective assistance in failing to raise on direct appeal the issues now presented in grounds two, three, and five of the habeas petition, and in failing to establish the timeliness of the motion for new trial, was not contrary to or an unreasonable application of clearly established federal law.  Nor any such decision by the state court based on an unreasonable determination of the facts in light of the evidence.  The claim in ground six is denied.

### Conclusion

For the foregoing reasons, Petitioner's six § 2254 claims are either procedurally barred or without merit.

Having reviewed the four other documents Petitioner recently filed (Docs. 21, 23, 27, and 28), the Court finds it appropriate to deny the petition for case disposition as moot in light of the disposition of Petitioner's habeas petition, and to deny the others. It is clear the Court has addressed Petitioner's habeas claims in view of both his present fifteen year sentence and his future three year sentence. Additionally, any state law issues presented in those materials are not cognizable in a federal habeas action. **Nance**, 392 F.3d at 289. Any federal issues in those documents that were presented in this federal habeas action have been resolved by the Court's consideration of Petitioner's habeas petition. Any non-habeas federal claims Petitioner seeks to present may, as he chooses, be pursued in a separate, proper proceeding. This disposition of the recently filed documents is not an indication by this Court that any further proceeding on the issues in those documents would be appropriate or successful.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Injunction Prohibiting Respondents' Continuation of Petitioner's Imprisonment [Doc. 21] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Petition for Case Disposition [Doc. 23] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Acknowledgment & Correction of Court's Order [Doc. 27] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Complaint & Petition for Declaratory Relief [Doc. 28] is **DENIED**.

**IT IS FINALLY ORDERED** that the 28 U.S.C. § 2254 petition of Jonathan Brock is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.

 /s/ Thomas C. Mummert, III

-

THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of September, 2009.